Marlatt v. Elliott.

---

A. N. MARLATT v. F. B. ELLIOTT.

No. 13,666.   (77 Pac. 104.)

SYLLABUS BY THE COURT.

1. AGENCY— *Commission on Sale of Real Estate.* It is sufficient to entitle a real-estate agent to recover his commission for the sale of land that he, under a contract with the owner thereof, has been the procuring cause of such sale. He need not have conducted it to a final and successful conclusion.

2. ——— *Particular Condition under Which an Owner is Liable for Commission.* If a real-estate agent, under a contract with the owner, call the attention of a prospective buyer to the land of such owner, and thereafter, moved by the efforts of such agent, the proposing buyer and the owner consummate the purchase and sale of such real estate, the agent is entitled to his commission, even though the purchaser, at the time the agent solicited him to buy, was not ready, willing and able to purchase.

Error from Riley district court; SAM. KIMBLE, judge.    Opinion filed June 11, 1904.    Affirmed.

*Robert J. Brock*,  and *Alvin R. Springer*, for plaintiff in error.

*John E. Hessin*, and *John Clarke Hessin*, for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. :  F. B. Elliot recovered judgment against A. N Marlatt in the sum of $240 for services rendered as a real-estate agent in selling a farm belonging to Marlatt to J. E. Conroy, the recovery being two per cent. of $12,000, the amount for which the land was sold.    The theory of the plaintiff upon which he based his right of recovery was that he had brought to the attention of the purchaser the land of the defendant, and that, although subsequently the defendant had himself consummated the sale, still his services had been the procuring cause of the sale, and, therefore, he was entitled to his commission.    The theory of the defense, as expressed in the answer, was that the plaintiff "had never found and made known to the defendant that he had a purchaser who was ready and willing and able to purchase said lands."

There was but little variance between the parties as to the facts of the case, which, stated as briefly as possible, are these :  Marlatt, who was a non-resident of the state, desiring to dispose of a half-section of valuable land, placed the same with Elliott for that purpose, instructing him to sell at forty dollars per acre, upon certain terms as to deferred payments, and agreeing to give him two per cent. of the price for which the land should be sold as his commission. This was about the 1st of June, 1901.    Elliott listed

the land upon his books, advertised it for sale, and called the attention of several parties to the matter. Learning that Mr. Conroy wished to purchase land of that quality in that neighborhood, he gave him the price and terms at which this could be obtained, and solicited him to buy. He offered to take him out to look at the land, but Conroy said that, as he had a relative living in the neighborhood, he would go and look at it some time when he was out there. At different times up to August or September Elliott spoke to Conroy about the purchase of the land, and Conroy at one time made an offer of $10,000 in cash for it. This offer was submitted to Marlatt and by him rejected. Conroy told Elliott that he would not purchase until he had sold some land which he owned in an adjoining county. Elliott at one time communicated to Marlatt the fact that he was seeking to sell the land to Conroy. About the 1st of December, the same year, Conroy, having become ready and desiring to purchase, opened up negotiations with Marlatt through an agent of his own, and these negotiations resulted in the sale by Marlatt to Conroy of the farm at the price of $12,000, being a reduction of $800 upon the price at which it was listed with Elliott.

The jury returned a general verdict in favor of Elliott, and also found in answer to special questions that, while plaintiff had not participated in the consummation of the sale, he had first brought the land to Conroy's attention, and the representations made by plaintiff had been the moving cause of the sale. This specific question was asked the jury and answered:

"Did the plaintiff, under the contract sued on, bring to the defendant a purchaser who was ready, willing and able to purchase the land of the defendant in accordance with the terms under which plaintiff

was authorized to make a sale? Ans. The plaintiff did bring the defendant a purchaser, but purchaser was not ready or willing to pay the price asked for in contract, as shown by subsequent negotiations."

In brief, the claim of the plaintiff was that he was entitled to recover if, after having called the attention of the purchaser to the land, the purchaser and the defendant thereafter, without the plaintiff's interference, had consummated the sale, even though it had been closed upon different terms and at a different price from those given to the plaintiff. The defendant, however, claimed that unless the plaintiff had procured a purchaser who was ready, willing and able to buy at the price and upon the terms given by the defendant, the plaintiff was not entitled to a commission.

The errors complained of rest in the refusal to permit many questions to be asked by the defendant and the giving and refusing to give instructions by the court, all in pursuance of this theory of the case. We are not required to speak of these specifications in detail ; it will be sufficient to examine the theories upon which they are based.

It is true that many cases are found in which the language used supports the defendant's claim. From *Aigler v. Land Co.*, 51 Kan. 718, 33 Pac. 593, the plaintiff in error in his brief quotes the following :

"Where a real-estate agent contracts with a landowner for a commission for the sale of his land, in order to recover for his services he must produce to the owner a purchaser ready, willing and able to buy upon the terms proposed."

But he fails to add the balance of the quotation found below, which fully illustrates the want of application of this principle to the peculiar facts of the case at bar :

"But if the purchaser be willing to make only an

option contract, and prefer, under such a contract, as he has a right to do, to forfeit a small sum paid upon the execution of the contract rather than to accept the property, and the contract is thereby annulled, the real-estate agent cannot recover his commission, as if an actual sale had been made or agreed upon.''

In like manner we are cited to *Davis v. Lawrence,* 52 Kan. 383, 34 Pac. 1051, where the law was laid down in the syllabus as follows :

''Real-estate agents, authorized to sell the land of another at a stated price and for a certain compensation, have earned their commission when they produce a purchaser able, ready and willing to purchase the land upon the terms and conditions agreed upon.''

This was a proper pronouncement of the law under the facts of that case, where it appeared that the sale which the agent had negotiated in accordance with the terms given him by the owner failed only because the owner was unable to furnish a good title to the property sold.   These two cases are sufficient to illustrate the proper application of the bald rule of law upon which the plaintiff in error depends and also its inapplicability to the facts of the case now under consideration.   These facts call for the application of that other rule, so often announced by this court and so thoroughly grounded in the law of equity and responsive to our sense of fair dealing. In *Plant v. Thompson,* 42 Kan. 664, 22 Pac. 726, 16 Am. St. Rep. 512, it was stated as follows :

''It is sufficient to entitle real-estate agents to their commission if a sale be effected through their agency as its procuring cause, although the sale be made by the owners of the property, if by their exertions the purchaser and owner be brought together, and the sale result therefrom.''

As supporting this view, see, also, *Ratts v. Shepherd,*

31—69 KAN.

37 Kan. 20, 14 Pac. 496 ; *Dreisback v. Rollins*, 39 id. 268 18 Pac. 187 ; *Betz v. Land Co.*, 46 id. 45, 26 Pac. 456, and many cases cited therein.

While the main contention was in accordance with the theories above indicated, it is also complained that the court refused to permit the introduction of evidence showing that between the time negotiations had ceased between Elliott and Conroy and the time the sale had been made by Marlatt, Conroy had given up the thought of buying, and the sale made by Marlatt had been wholly independent of such negotiations. Of course, had this been the fact, and had Elliott not been the procuring cause of the sale, then no recovery could have been had. The purchaser, Conroy, was, while a witness, asked this question :

"Well, were or were not the negotiations between you and the plaintiff entirely broken off and unsuccessful before you made up your mind to buy this land ?"

An objection to this was sustained because it was incompetent, irrelevant, immaterial, and in the nature of a conclusion. We think it a conclusion, and if so, incompetent. The answer to this question was the ultimate fact to be found by the jury. This was followed by an offer of proof from the same witness even more faulty than the question itself, an objection to which was correctly sustained.

The defendant requested the giving of an instruction covering the view of the case last cited. Its refusal is assigned as error. Admitting there was evidence requiring such instruction, we think the theory was sufficiently presented in a negative form by an instruction which was given, and which required the jury to find by a preponderance of the evi-

Tarman v. Atchison.

dence that the sale finally consummated was by reason of the negotiations instituted by the plaintiff. .

Upon the entire case we are of the opinion that no substantial error was committed by the court, and its judgment will therefore be affirmed.

All the Justices concurring.