No. 23,603.

C. H. RYAN and CONSTANT LA FORGE, Partners, *Appellants,* v. GEORGE W. STRONG, *Appellee.*

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT — *Purchaser Found — Sale — Action for Commissions — Verdict Contrary to Evidence.* The controlling and conceded facts touching plaintiffs' claim to a real-estate agent's commission on the sale of property examined, and *held,* that a verdict for the defendant was contrary to the evidence and should have been set aside.

2. SAME. An issue of partnership raised in the first trial, and the significance given to the acts or services of an alleged partner to support plaintiffs' claim to a real-estate dealer's commission, considered, and the minimized significance to be given thereto in another trial discussed.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed April 8, 1922. Reversed.

W. H. Ryan, of Girard, Frank Doster, and J. E. Addington, both of Topeka, for the appellants.

B. S. Gaitskill, of Girard, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for a commission on the sale of real estate.

Issues were joined, and the cause was tried before a jury which returned a verdict for defendant. The plaintiffs moved to set the verdict aside on the ground that it was "wholly contrary to the evidence." This was denied; judgment was entered for defendant, and plaintiffs appeal.

The plaintiff C. H. Ryan was a real-estate dealer in Brazilton, a village near Girard. The other plaintiff, Constant La Forge, was a farmer residing near Brazilton. The defendant, George Strong, a farmer by occupation, owned a ten-acre place in or near Girard and resided thereat, but was disposed to return to agricultural pursuits. One day in July, 1919, while Strong and La Forge were out in a wheat field assisting a farmer in threshing, Strong said to La Forge that he was thinking of going back to the farm if he could sell his town place at $6,000. La Forge told him that one John Dailey wanted to buy a place, and that Strong's place would probably suit him. La Forge, although a farmer, occasionally made a deal in real estate, and very shortly after learning that Strong was inclined to sell his place at Girard he met Ryan, the Brazilton real-estate agent, and told him that Strong's place was for sale, and suggested that Ryan get a commission contract from Strong to sell the place, and they made an agreement to divide any commission they might earn by effecting a sale. Accordingly Ryan called on Strong and obtained a written contract from him, dated July 22, 1919, appointing Ryan as Strong's agent to sell the Girard place for $6,000 at the usual commission. At the time this contract was made, it was also agreed between Ryan and Strong that if the latter should sell the place himself there would be no commission to pay. The defendant Strong, called as a witness for plaintiff, testified that Ryan told him he had a man in view who would probably buy the property.

"Q. I will ask you if he advised you that Mr. Dailey would buy that place and advised you to go and see him   A. Didn't say he would buy it said he might buy it.

"Q. But he told you Mr. Dailey was in the market for a place? A. Yes, sir. . . .

"Q. What else was said, anything else? A. I asked him who it was he had on the string and he said it was John Dailey and told me where he lived and said I will tell you what you better do, he said you better go and see these people yourself because I don't think it would do any good for me to go and see them, it might knock the sale of the property—spoke as though those people didn't have much use for him.

"Q. Anything else said at that time? A. No, not as I remember just now, I don't recall anything that was said."

Within two or three days after having this conversation with Ryan, Strong called at Dailey's place, but the latter was not at home. Strong talked with Dailey's daughter and told her his price on the property. The daughter said that the Dailey family usually went to town on Saturday and that they would look at the property, and "maybe we could make a deal." Dailey came to see Strong's place the following Sunday, and shortly thereafter he bought the property.

From the foregoing, which is a summary of defendant Strong's own testimony, it seems clear that Ryan established a *prima facie* case against Strong for a real-estate dealer's commission. He had a valid contract of agency with Strong, and he gave Strong the name of his prospective purchaser, John Dailey, and made the suggestion that Strong should go himself to see Dailey. That suggestion and Strong's action pursuant thereto were mere incidents in the strategy of salesmanship, and the fact that pursuant to Ryan's suggestion Strong made the deal himself rather than intermediately through Ryan did not render Ryan in any wise less the conducive and procuring cause of the sale. (*Ratts v. Shepherd,* 37 Kan. 20, 14 Pac. 496; *Dreisbach v. Rollins,* 39 Kan. 268, 271, 18 Pac. 187; *Plant v. Thompson,* 42 Kan. 664, 22 Pac. 726; *Marlatt v. Elliott,* 69 Kan. 477, 77 Pac. 104; *Port Huron Co. v. Wilber,* 75 Kan. 175, syl. ¶ 2, 88 Pac. 892.)

In *Jones v. Adler,* 34 Md. 440, it was said:

"It is well settled, if the agent introduces or discloses the name of the purchaser, and such introduction or disclosure is the foundation upon which negotiations are begun and the sale effected, he will be entitled to commissions, and this too although in point of fact the sale may have been made by the owner. In other words, he cannot avail himself of the services, and by making a sale through information derived from the agent, deprive the latter of his commissions." (p. 443.)

The plaintiffs, we think, are somewhat to blame for the erroneous

result which was reached in the trial court—by dragging in an alleged partnership of Ryan and La Forge. The fact of that partnership was never communicated to Strong; La Forge had no contractual relations with Strong; and consequently nothing told Strong by La Forge touching Dailey as a prospective buyer, or told Dailey touching Strong's inclination to sell, is of any significance in fixing Strong's liability to Ryan and La Forge for a commission. If Strong, when Ryan answered his question, "Who it was he had on the string?" had said something like this—"O, I know about Dailey myself; I have him in mind; my friend La Forge told me about him some time ago and I plan to act on what he told me and try to effect a sale to Dailey without assistance from you," that would have relieved Strong of any liability to Ryan for a commission on a sale to Dailey. But Strong gave no intimation to Ryan that he had Dailey in mind as a prospective purchaser; he kept silent when frankness and fair dealing required him to speak, if in fact he had in mind to act on the information previously given him by La Forge.

La Forge appears in this lawsuit as plaintiff with Ryan, and the cause was partly tried, and certainly defended on the theory that Strong owed nothing to the two plaintiffs for La Forge's services. To that extent, the defendant is correct. His liability grows out of his business relations with Ryan, and he owes nothing to either Ryan or La Forge for any information or services performed by La Forge. That Ryan agreed to divide his commission with La Forge is a matter which concerns the alleged partners and them alone, and in another trial that matter should be definitely understood. It does appear, however, that the verdict and judgment were contrary to the evidence, and that a new trial should have been ordered.

Reversed, and remanded for a new trial.