[Sac. No. 518. In Bank.—August 17, 1898.]

JAMES H. DEVINE, Respondent, v. BOARD OF SUPERVISORS OF SACRAMENTO COUNTY et al., Appellants.

COUNTIES—BONDS OF COUNTY—COUNTY ROADS—SACRAMENTO.—The board of supervisors of Sacramento county have no power, in the absence of statutory authorization, to issue the bonds of the county to raise funds for the construction of a county road, such as a road extending from the city of Sacramento to Folsom. Such authorization is not conferred by section 25 of the County Government Act of 1897 (Stats. 1897, p. 460), which provides that "any county may incur or refund a bonded indebtedness for any purpose for which the board of supervisors are herein authorized to expend the funds of the county."

ID.—ROAD TAX CANNOT BE IMPOSED ON MUNICIPALITY—INJUNCTION.—The authority given to the board of supervisors to expend the funds of the county in constructing county roads is limited to localities

outside of incorporated cities, and no tax can be levied for county road purposes upon any property in such city; and as property within the limits of the city of Sacramento would necessarily have to be taxed for the payment of the bonds of the county issued for the construction of such road, it follows that such bonds, if issued are illegal, and the levy of a special tax for their payment will be enjoined at the instance of a taxpayer of the municipality.

APPEAL from a judgment of the Superior Court of Sacramento County. Joseph W. Hughes, Judge.

The facts are stated in the opinion of the court.

Frank D. Ryan, and J. Charles Jones, for Appellant.

James B. Devine, and H. G. Soule, for Respondent.

THE COURT—This is an action to restrain the defendants from levying a special tax for the current year to create an interest and sinking fund to provide for the payment of the principal and interest of certain so-called Folsom road bonds. A general demurrer to the complaint was overruled, and, defendants declining to answer, judgment was rendered in favor of the plaintiff, from which the defendants appeal.

The only question to be determined is the validity of the bonds, and this depends altogether upon the power of the board of supervisors to issue them, for, so far as the proceedings leading to their issuance are concerned, they seem to have been perfectly regular in form.

The issuance of the bonds in question was no doubt designed as a means of cooperation in carrying out the purposes of an act approved March 29, 1897 (Stats. 1897, p. 239), entitled: "An act to provide for the construction of a state highway or wagon road from Sacramento city to Folsom, in Sacramento county, and appropriating crushed rock and granite or stone blocks for drains and culverts for same."

By the terms of this act the governor was authorized to appoint three commissioners, whose duty it should be to construct a model road between the designated *termini*. No money was appropriated to pay the expense of building the road, but the directors of the Folsom prison were authorized and directed to

furnish free of cost the necessary crushed rock for macadamizing, and cut stone for culverts, drains, etc.

The act contains no invitation to Sacramento county to contribute funds to pay expenses, but prohibits the doing of any work on the road until the title to the lands upon which it is laid shall have been conveyed to the state.

In October, 1897, the defendants—the board of supervisors —ordered a special election for voting upon a proposition to issue the bonds of the county to the amount of seventy-five thousand dollars, "for the purpose of improving and macadamizing the public road, to wit, the highway in Sacramento county which is now situated and runs closely to the line of the Sacramento and Placerville Railroad, which now extends between said Sacramento city and the town of Folsom."

At the election duly held in pursuance of this order the proposition was carried by a large majority, and thereupon the board duly passed an ordinance providing for the issuance of the bonds and for the creation of an interest and sinking fund to pay them. The bonds were subsequently issued and sold at a premium.

The ordinance makes no reference to the Folsom road act, or to the commission appointed thereunder. It does not appear that the two propositions have any necessary or legal connection, and it is seriously doubtful, to say the least, whether the board of supervisors could lawfully put the proceeds of county bonds at the disposal of the state commissioners, even if it had been so expressly provided in the ordinance, and the authority to issue the bonds were unquestioned. For these, and for other reasons which need not be stated, the question of the validity of these bonds must be determined without any reference to the Folsom road act. The inquiry is, merely, whether the board of supervisors of Sacramento county can issue bonds of the county to raise funds for the construction of a county road.

There is, of course, no such authority unless it is conferred by statute, and the only claim of statutory authority is based upon a clause of subdivision 13 of section 25 of the County Government Act of 1897 (Stats. 1897, p. 460), as follows: "And any county may incur or refund a bonded indebtedness for any purpose for which the board of supervisors are herein authorized to expend the funds of the county."

It is claimed that the board of supervisors of Sacramento county are authorized in the County Government Act, and in statutes to which it refers, to expend funds of the county in constructing county roads. This is not true in the sense of the clause above quoted. In a county like Sacramento, in which there is an incorporated city like the city of Sacramento wherein work and improvements upon the streets is done by virtue of laws relating to street work and improvements within such municipality, no tax can be levied for county road purposes upon any property in such city. (Stats. 1883, p. 20.) The road fund, therefore, is a fund to which the whole county does not contribute. It is a special fund levied upon a portion of the county, to be expended exclusively for the benefit of that portion of the county upon which it is levied. But the bonds of a county—the bonds in question here—are the bonds of the whole county, and must be paid—if held valid—by means of a tax levied upon all the property of the county, including that within the city of Sacramento. The County Government Act does not countenance such a result. The board of supervisors cannot borrow money on bonds of the whole county to expend upon an object for which they are only authorized to expend the funds of a part of the county.

In the case of *People v. Counts*, 89 Cal. 15, there was no suggestion that the road tax in that county (Mariposa) was not levied upon the entire county. The point upon which this decision turns was not presented, and we do not know that it could have been made. But, however that may be, we are satisfied that, since the board of supervisors are prohibited from taxing the city to pay for county roads, they cannot do indirectly by issuing bonds what they are forbidden to do directly. And, although it clearly appears that a very large majority of the citizens of Sacramento are in favor of the issuance of the bonds and of the construction of the road, the plaintiff, who is a taxpayer of the city, cannot be denied the relief which he asks.

The judgment is affirmed.

The chief justice, deeming himself disqualified, did not participate in the decision of this case.

Rehearing denied.