[Sac. No. 1617. In Bank.—April 24, 1908.]

HOWARD K. JOHNSON et al., Petitioners, v. L. P. WILLIAMS, as County Auditor of the County of Sacramento, Respondent.

COUNTY INDEBTEDNESS—LEGISLATIVE CONTROL—ROAD AND HIGHWAYS OUTSIDE OF MUNICIPALITIES—RECOURSE TO GENERAL FUND.—It is within the power of the legislature to authorize recourse by a county to its general fund, consisting almost entirely of taxes collected from all parts of the county, for work on its public roads and highways lying outside of the limits of municipalities within the county. Instances of the exercise of such power may be found in sections 2643, 2647 and 2716, of the Political Code.

ID.—DOUBLE TAXATION.—There is no double taxation caused by such an expenditure to the owners of property within a municipality.

ID.— BONDED INDEBTEDNESS OF COUNTY — CONSTRUCTION OF ROADS, BRIDGES, AND HIGHWAYS.—Under section 4088 of the Political Code, enacted March 18, 1907 (Stats. 1907, p. 382), authorizing any county to incur a bonded indebtedness for any purpose, for which the board of supervisors are herein authorized to expend the funds of said county, "or for the purpose of building or constructing roads, bridges or highways," a county may issue its bonds, payable by means of a tax levied on all the property of the county, including that within municipalities, for the purpose of building or constructing roads, bridges, or highways; and it is immaterial that there has been no modification or repeal of section 2 of the Highway Act of February 28, 1883, which simply prohibits the inclusion of a municipality within a road district of the county, or the collection therein of the county road poll-tax, or the property tax for county highway purposes levied annually by the board of supervisors.

ID.—REPAIRING BRIDGES—GENERAL FUND AVAILABLE FOR.—Under section 2712 of the Political Code, the board of supervisors of a county are authorized to expend money in the general fund of the county, collected from all parts of the county including municipalities, for repairing bridges, under the circumstances and in the manner provided by that section; and may issue the bonds of the county for the purpose of making such repairs, in pursuance of the authorization contained in section 4088 of that code, to the effect that a bonded indebtedness may be incurred "for any purpose for which the board of supervisors are authorized to expend the funds of said county."

ID.—DETERMINATION OF SUPERVISORS FOR RESORT TO GENERAL FUND.— Where the proceedings for the issuance of county bonds for repairing bridges were ordered and instituted by the unanimous vote of the board of supervisors, such action will be taken as a determination by the whole board of the facts authorizing resort to the general fund for such purpose, in compliance with the requirements of section 2712 of the Political Code.

ID.—PROVISION FOR PAYMENT OF INTEREST—GENERAL TAX LEVY—CONSTITUTIONAL REQUIREMENTS.—The object of section 18, article XI, of the constitution, providing that no county indebtedness or liability exceeding the income or revenue provided for the year shall be incurred, "unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due," or is simply to insure provision annually, at the time of the general tax levy, for such money as would be necessary to pay interest and principal falling due before the time of the next general tax levy; and a county bond issue is not invalidated by the fact that the payment of interest might be deferred for a short time pending

CLIII Cal.—24

proceedings for the collection of a tax for that purpose already levied, or by the fact that the payment of the first installment of the interest might be deferred until a general tax levy and collection thereunder because it fell due prior to the first general tax levy after the incurring of the indebtedness.

APPLICATION for a Writ of Mandate directed to the County Auditor of the County of Sacramento.

The facts are stated in the opinion of the court.

E. S. Wachhorst, District Attorney, W. H. Devlin, and J. B. Devine, for Petitioners.

H. C. Ross, for Respondent.

ANGELLOTTI, J.—This is a proceeding instituted in this court to obtain a peremptory writ of mandate requiring the defendant to attest and sign, as auditor of Sacramento County, certain proposed bonds of said county, which have been ordered issued by the board of supervisors, after such issuance had been authorized by the electors of the county at a special election held in the manner provided by the constitution and statutes. The auditor's refusal to perform this official action is based on his claims that the bonds cannot be legally issued, and the matter was submitted for decision upon a demurrer to the petition.

The proposed bonds are of three different kinds:—

First. Bonds to the extent of six hundred and sixty thousand dollars for the purpose of erecting and constructing a new county courthouse, and in connection therewith a new county jail in the said county of Sacramento.

Second. Bonds to the extent of six hundred thousand dollars for the purpose of building certain specified roads and highways in said county.

Third. Bonds to the extent of two hundred and twenty-five thousand dollars for the purpose of building and constructing certain specified bridges in said county, the itemized statement in this behalf describing the work as to some of the bridges to be "repairs."

The city of Sacramento is a municipal corporation existing under a freeholders' charter, and having its corporate bound-

aries within the boundaries of the county of Sacramento. Under the existing laws applicable to all municipalities, it is required to construct and maintain its own streets and bridges without aid from any county fund, and is exempt from certain road taxes by reason of the following provision of section 2 of the Highway Act of February 28, 1883,—viz. "Provided further, that nothing herein contained shall be deemed to authorize the levy or collection of a road poll-tax, or property road-tax, within municipalities existing under the laws of this state, wherein work and improvements upon the streets is done by virtue of any law relating to street work and improvements within such municipality. Nor shall any such incorporated city or town be by the supervisors of the county included or embraced in any road district by them established under this act." (Stats. 1883, p. 20.) The roads and bridges to be constructed and repaired are all outside of the corporate limits of the city of Sacramento. The proposed bonds of the county and the interest. thereon are necessarily to be paid from taxes levied by the county on all the property in the county, including that within the corporate limits of said city. The principal contention of defendant is that the law does not authorize the issuance of county bonds payable from taxes to be levied on all the property of the county, including that situated in incorporated cities and towns, for the purpose of constructing roads, bridges, and highways, or repairing bridges.

It is apparent that no constitutional question is presented by this contention. It is undoubtedly within the power of the legislative department to authorize recourse by a county to its general fund, consisting almost entirely of taxes collected from all parts of the county, for work on its public roads and highways lying outside of the limits of municipalities within the county, and our statutes show several instances of the exercise of this power, the validity of which has never been challenged. Section 2712, of the Political Code, authorizes a portion of the cost of constructing or maintaining, or repairing any bridge, or the cost of purchasing a toll-road, to be paid under certain circumstances by the supervisors from the county general fund. Subdivision 10 of section 2643 authorizes the cost of waterworks, oil tanks, etc., for the sprinkling of roads and the cost of sprinkling to be charged to such fund.

The same subdivision authorizes the expense of a road three miles in length, the cost of which is too great to be paid out of the road fund, to be paid from the general county fund. Section 2647 of the Political Code contains a similar provision as to one half of the cost of fences constructed on certain public highways. There is no double taxation caused by such an expenditure to the owners of property within a municipality. What they are thereby caused to pay for the expense of public highways lying outside of the municipality is nothing more than their proportion of such expense as the legislative power deems should be borne by the whole county. The whole matter is purely one of statutory legislation.

Has the legislature authorized the issuance of county bonds for the purposes under discussion?

The proceedings for the issuance of the bonds in question were had under the provisions of section 4088 of the Political Code, enacted March 18, 1907 (Stats. 1907, p. 382). That section provides that "any county may incur . . . a bonded indebtedness for any purposes for which the board of supervisors are herein authorized to expend the funds of said county, *or for the purpose of building or constructing roads, bridges or highways.*" The portion of this provision which we have italicized is new to our law, the corresponding section of the former County Government Act (County Government Act of 1897, sec. 13, Stats. 1897, p. 460) providing simply that such a bonded indebtedness might be incurred "for any purpose for which the board of supervisors are herein authorized to expend the funds of said county." Under the law last referred to, the cases of *Devine* v. *Board of Supervisors*, 121 Cal. 670, [54 Pac. 262]; and *Wright* v. *Sacramento County*, not reported, [54 Pac. 1030], were decided, and it was held therein that the statute did not authorize the issuance of county bonds for the construction of a county highway, the reason given being that the board of supervisors of Sacramento County were not authorized to expend the general fund of the county, collected from all parts of the county including municipalities, for such purposes. After these decisions, the legislature amended the law on the question by adding the words we have italicized above. It is manifest to us that these words were added for the express purpose of changing the statutes as they had been construed in the

Devine and Wright cases to the end that county bonds payable by means of a tax levied on all the property of the county including that within municipalities might be issued by any county for the purpose of "building or constructing roads, bridges or highways." This is the plain meaning of the words used without regard to prior decisions on the subject, but when the legislative action is viewed in the light of those decisions, there is no possible escape from the conclusion that we have stated. It is unimportant that there has been no modification or repeal of section 2 of the act of February 28, 1883, hereinbefore quoted. That section simply prohibits the inclusion of a municipality within a road district of the county, or the collection therein of the county road poll-tax, or the property tax for county highway purposes levied annually by the board of supervisors (Pol. Code, secs. 2651-2655), and its provisions are in no way affected by the later enactment. We are satisfied that section 4088 of the Political Code authorizes the issuance of the bonds of Sacramento County for the purpose of building or constructing roads, bridges, and highways therein.

The amendment of 1907 does not, in terms, authorize the issuance of county bonds for the purpose of "repairing" bridges already constructed. As we have seen, a portion of the two-hundred-and-twenty-five-thousand-dollar issue for bridge purposes was for such repairs, and it is claimed that the rule of the Devine and Wright cases is applicable thereto. We may assume, without deciding, that the issuance of bonds for "repairs" of bridges is not authorized by the provision for such issuance for the purpose of "building or constructing" bridges. But the section also authorizes such issuance "for any purposes for which the board of supervisors are herein authorized to expend the funds of said county." Section 2712, of the Political Code, provides: "Whenever it appears to the board of supervisors that any road district is or would be unreasonably burdened by the expense of constructing, or by the maintenance and repairs of any bridge . . . they may, in their discretion, cause a portion of the aggregate cost or expense to be paid out of the general road fund of the county, or by vote of two thirds of the board of supervisors, said board may, in their discretion, order a portion of the cost of construction and repairs of bridges . . . to be paid out of

the county general fund as well as the general road fund."
By this section the board of supervisors of Sacramento County
are authorized to expend money in the general fund of the
county, collected from all parts of the county including muni-
cipalities, for repairing bridges, under the circumstances and
in the manner provided by the section. The proceedings for
the issuance of these bonds were ordered and instituted by
the unanimous vote of such board, and this must be taken
as a determination by the whole board of the facts authoriz-
ing resort to such general fund for the purpose indicated.
Under these circumstances, the issuance of bonds for repair-
ing bridges was permitted by that part of section 4088 which
authorizes the issuance of bonds for any purpose for which
the board are authorized to expend the funds of the county.

The only remaining objection is one made to all the bonds,
based on the provisions of section 18, of article XI, of the
constitution. This section provides that no indebtedness or
liability exceeding the income or revenue provided for the
year shall be incurred, "unless before or at the time of in-
curring such indebtedness provision shall be made for the
collection of an annual tax sufficient to pay the interest on such
indebtedness as it falls due, and also provision to constitute
a sinking fund for the payment of the principal," etc. The
section of the Political Code under which these proceedings
were had (sec. 4088) provides, following the constitutional
provision, for the levy of a tax by the board of supervisors
"at the time of making the next general tax levy after
incurring the indebtedness," and annually thereafter, for the
purposes of paying the bonds and interest, which "must not
be less than sufficient to pay the interest on said bonds, and
such portion of the principal, if any, as is to become due
before the time for making the next general tax levy." It
further provides: "And the board of supervisors, before or
at the time of issuing said bonds by ordinance shall provide
for the levy of an annual tax sufficient to effect the objects
of this provision." The petition in this proceeding shows that
the board of supervisors did, at the time of making the order
prescribing the form of bonds and coupons, etc., October 7,
1907, adopt an ordinance providing for the levying of an
annual tax commencing with the general tax levy to be made
in September, 1908, sufficient for the purposes stated, as well

as for the purpose of paying all interest accruing on such bonds. This ordinance was adopted subsequent to the general tax levy for the year 1907, which by law is required to be made in the month of September of each year, and the provisions therein for an annual tax fully complied with the requirements of the constitution and the statute as to the principal, and as to all interest falling due after the first half of the year 1908. But the proposed bonds were to bear date December 10, 1907, with interest payable semi-annually, and the first interest coupon on each bond would, by its terms, be due and payable on June 10, 1908, if such bond had been sold and delivered prior to that date. The result would be that the tax to be levied for the purpose of paying interest would not be available at the time the first installment of interest became due. It is upon this fact alone, as we understand it, that the claim of the defendant that the constitutional requirement has not been complied with rests. We are of the opinion, however, that there was a substantial compliance with the requirement of the constitutional provision. The provision was adopted in the light of the rule which has always existed in this state for an annual general tax levy. No levy at any other time than that of the general tax levy was contemplated. The object was simply to insure provision annually, at the time of such general tax levy, for such money as would be necessary to pay interest and principal falling due before the time of the next general tax levy, and to place in the sinking fund for the payment of the principal the amount required by law. That the payment of interest might be deferred for a short time pending proceedings for the collection of a tax for that purpose already levied, or that the payment of the first installment of the interest on the bonds might be deferred until a general tax levy and collection thereunder because it fell due prior to the first general tax levy after the incurring of the indebtedness, were not matters being guarded against by the framers of the constitution. The important thing was that a tax sufficient to pay the interest and principal falling due, and to make up the necessary sinking fund, should be levied and collected annually, and this we are satisfied was all that was intended by the provision under discussion. Under this construction of such provision, the proceedings for the incurring of the

indebtedness were in compliance with the constitutional requirement.

This disposes of all the objections made by the defendant to the proposed bonds. It follows that the plaintiff is entitled to the relief sought.

Let the peremptory writ of mandate issue in accord with the prayer of the petition, requiring the defendant forthwith to attest and sign, as auditor of Sacramento County, the bonds and interest coupons therein described, and to do and perform such other acts in the premises as are required of him as such auditor.

Sloss, J., Shaw, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.

McFarland, J., dissented.