[Civ. No. 680.   First Appellate District.—January 11, 1910.]

## HORACE R. ROBINSON et al., Respondents, v. JAMES A. LINSCOTT et al., Appellants.

PUBLIC ROAD—LENGTH AND COST—AUTHORITY OF SUPERVISORS—PAY-
MENT FROM GENERAL FUND — VALIDITY OF STATUTE.—Where a
board of supervisors, in compliance with subdivision 10 of sec-
tion 2643 of the Political Code, by unanimous vote authorized the
construction of a public road ten miles in length, at a cost in
excess of $5,000, and ordered it to be paid out of the county gen-
eral fund, the provision under which they acted is one wholly of
valid statutory regulation, and involves no constitutional ques-
tion.

ID.—GENERAL FUND DERIVED IN PART FROM TAXATION IN MUNICIPALI-
TIES—IMPROPER ANNULMENT OF ROAD PROCEEDING UPON WRIT OF
REVIEW.—The fact that the general fund of the county is de-
rived in part from taxation of property in municipalities, which
are required by law to construct their own streets and alleys, and
which cannot be included in any general road district, cannot au-
thorize the superior court by writ of review, upon the petition of
taxpayers of municipalities, to annul the proceeding by the super-
visors for the construction of such public road under statutory
authority.

ID.—ABSENCE OF DOUBLE TAXATION.—The provisions of law applicable
to municipalities do not present a case of the double taxation
of municipalities in relation to the general fund.   It is plain that
the legislature intended that the work and improvements on streets
and roads lying within municipalities and road districts should
be paid for by them respectively; but also, that where a road
shall be more than three miles in length and will cost in excess
of $5,000, and in the opinion of two-thirds of the members of the
board of supervisors, is a public necessity, or will be of general
benefit, then the cost of its acquisition and construction should
and may be paid from the general county fund.   In such case,
there is no double taxation, although the amount paid by an in-
dividual for road and street purposes may be thereby increased.

ID.—CONSTRUCTION OF POLITICAL CODE—CONSISTENCY OF PROVISIONS—
LATER ENACTMENT—AUTHORITY FOR CONSTRUCTION OF ROAD CON-
TROLLING.—*Held,* that there is no conflict between subdivision 10
of section 2643 of the Political Code, sanctioning the road in
question, and section 2 of the act of 1883, or section 2653 of the
Political Code, providing for the levy of a road tax; but if
there be a conflict, said subdivision 10 must control, because
added to section 2643 twenty years after the passage of either
of the other sections.

Id.—Legislative Power Over General Fund of County.—The legis-
lature has power to authorize recourse by a county to its general
fund for any general purpose, not only such as are authorized in
subdivision 10 of section 2643, but also in section 2647 and sec-
tion 2782 of the Political Code.

Id.—Authority of Supervisors to Purchase Private Road as Part
of Proposed Road.—The supervisors, under their statutory au-
thority to "acquire or construct a road," may purchase a private
road, and make it a part of the proposed road, especially when it
appears that the purchase price thereof would be several thousand
dollars less than the construction of a parallel road.

APPEAL from a judgment of the Superior Court of
Santa Cruz County. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Benjamin K. Knight, District Attorney, and Wyckoff &
Gardner, for Appellants.

Cassin & Lucas, for Respondents.

KERRIGAN, J.—This is an appeal by the defendants, the
board of supervisors of Santa Cruz county, from a judgment
in a proceeding in *certiorari*, annulling certain proceedings of
said board in reference to the acquisition of a public road.

The proceedings annulled were instituted by certain free-
holders and residents of two certain road districts in Santa
Cruz county for the purpose of laying out and opening a
new public road in said districts of the length of about ten
miles, to constitute a direct route from Pajaro valley through
the mountains in a northerly direction to connect near
Wright's with the road from San Jose to Santa Cruz. Pur-
suant to the requirements of section 2643 of the Political
Code, under the provisions of which section these proceedings
were conducted, three viewers were appointed. They filed
their report, in which they recommended the opening of the
road, and estimated the damages to the different property
owners over whose land the road would pass. After a full
hearing of the matter the board passed a resolution, and de-
termined by a unanimous vote, all the members being pres-
ent, to acquire said road, and that as the proposed road was
to be more than three miles long, and the cost thereof would

be in excess of $5,000, and too great to be borne by any of the road funds of the county, the cost of its construction should be paid out of the general county fund, and they so directed. Thereupon plaintiffs commenced these proceedings. They are residents and taxpayers of said county, and the properties on which they pay taxes are situated within the limits of two named municipal corporations in that county. Under the provisions of what is commonly called the Vrooman act, these municipalities, like all others in the state, must construct and maintain their own streets and alleys, and, according to section 2 of the highway act of February, 1883 (Stats. 1883, p. 20), they cannot be included within any road district of the county, and are exempt from paying for work and improvements on roads situated without their corporate confines. This section 2 reads as follows: "Sec. 2. . . . Provided, further, that nothing herein contained shall be deemed to authorize the levy or collection of a road poll tax, or property road tax, within municipalities existing under the laws of this state, wherein work and improvements upon the streets is done by virtue of any law relating to street work and improvements within such municipality. Nor shall any such incorporated city or town be by the supervisors of the county included or embraced within any road district by them established under this act."

The money in the general fund consists in part of taxes collected on property within the corporate limits of said municipalities; and plaintiffs contend that the contemplated expenditure would be not only in conflict with the section just quoted, but also would be double taxation, and that therefore section 2643 of the Political Code, authorizing such expenditure, is unconstitutional.

Subdivision 10 of that section reads as follows: " . . . Whenever it is determined by a two-thirds vote of the board of supervisors of any county that the public convenience and necessity demands the acquisition or construction of a road in excess of three miles in length, the cost of which will be too great to pay out of any of the road funds of the county, the board of supervisors may by a resolution passed by a two-thirds vote of the board of supervisors determine to acquire or construct such road, and thereafter may proceed to acquire or construct such road, and if the cost of such road

when constructed shall exceed five thousand dollars, such cost may be charged to the general county fund, the general road fund or the district fund of the district or districts benefited.''

No constitutional question is involved. The matter is wholly one of statutory regulation. Nor is there, in our opinion, any conflict between subdivision 10 of section 2643 and section 2 of the act of 1883, or section 2653 of the Political Code (providing for the levy of a road tax), but if there be a conflict, subdivision 10 must prevail, because that subdivision was added to section 2643 on March 23, 1903 (Stats. 1903, p. 70), twenty years after the passage of either of the other sections.

Nor do the sections referred to by plaintiffs present a case of double taxation. When all the provisions relied upon by plaintiffs are carefully read, it is plain that the legislature intended that the work and improvements on streets and roads lying within municipalities and road districts should be paid for by them respectively, but that where a road will be more than three miles long and will cost in excess of $5,000, and in the opinion of two-thirds of the members of the board of supervisors is a public necessity, or will be of general public benefit, then the cost of its acquisition or construction should and may be paid from the general county fund; and in such a case there is no double taxation, although the amount paid by a given individual for road and street purposes may be thereby increased. This view is fully sustained by the case of *Johnson* v. *Williams,* 153 Cal. 368, [95 Pac. 655], decided since the commencement of this action. There it was claimed that because the city of Sacramento, a municipal corporation, was compelled to construct and maintain its own streets and bridges, that under section 2 of the act of 1883, it was exempt from taxes to pay for roads and bridges situated outside its corporate limits, and that section 4088 of the Political Code could not be construed as authorizing the issuance of bonds chargeable against the whole county. That section provides that any ''county may incur . . . bonded indebtedness . . . for the purpose of building or constructing roads, bridges or highways.'' There the roads and bridges to be constructed and repaired were all outside the boundaries of the city of Sacramento. In all essential respects that case and this one

are alike, and the supreme court, in bank, held that the legislature could authorize the costs of public roads to be paid out of the county general fund, saying: "It is undoubtedly within the power of the legislative department to authorize recourse by a county to its general fund, consisting almost entirely of taxes collected from all parts of the county, for work on its public roads and highways lying outside of the limits of municipalities within the county, and our statutes show several instances of the exercise of this power, the validity of which has never been challenged. Section 2712 of the Political Code authorizes a portion of the cost of constructing or maintaining, or repairing any bridge, or the cost of purchasing a toll road, to be paid under certain circumstances by the supervisors from the county general fund. Subdivision 10 of section 2643 authorizes the cost of waterworks, oil tanks, etc., for the sprinkling of roads and the cost of sprinkling to be charged to such fund. The same subdivision authorizes the expense of a road three miles in length, the cost of which is too great to be paid out of the road fund, to be paid from the general county fund. Section 2647 of the Political Code contains a similar provision as to one-half the cost of fences constructed on certain public highways. There is no double taxation caused by such an expenditure to the owners of property within a municipality. What they are thereby caused to pay for the expense of public highways lying outside of the municipality is nothing more than their proportion of such expense as the legislative power deems should be borne by the whole county. The whole matter is purely one of statutory legislation."

On the power of the legislature in matters of taxation, see, also, *In re Madera Irr. Dist.*, 92 Cal. 296, [27 Am. St. Rep. 106, 28 Pac. 272] ; *Board etc. of Modesto Irr. Dist* v. *Tregea*, 38 Cal. 334, [26 Pac. 237] ; *Lent* v. *Tillson*, 72 Cal. 428, [14 Pac. 71].

About six miles of the proposed highway is located along a private road which had already been constructed, and the owners thereof consented to give to the public the land over which it ran, but demanded the cost of the construction of the road as damages, part of which was allowed by the viewers. In reference to this matter plaintiffs contend that the board of supervisors had no authority to purchase or ac-

quire a road already constructed. The answer to this contention is found in the plain language of the section, which in terms authorizes the board to ''acquire or construct such road.'' It would be remarkable legislation if the county was compelled to parallel an already existing private road and could not purchase it. In the present case serious loss would be entailed upon the county, for the viewers and the board—on the theory that the road would be of benefit to the land through which it passed—placed the damages at several thousand dollars less than the cost of construction.

No other point need be discussed.

The judgment is reversed.

Cooper, P. J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 12, 1910.