[S. F. No. 5817. In Bank.—October 31, 1912.]

E. P. CONNELLY, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Respondent.

TAXATION — MUNICIPAL CORPORATIONS — LEVY FOR UNAUTHORIZED PURPOSE — PAYMENT UNDER PROTEST.—Section 3819 of the Political Code authorizes the recovery of taxes levied by a municipality for an unauthorized purpose, the payment of which was made under protest.

ID.—SAN FRANCISCO CHARTER—UNSOLD BONDS NOT OBLIGATIONS OF CITY —TAX CANNOT BE LEVIED FOR PAYMENT OF.—Under the charter of the city and county of San Francisco only such bonds of the munici-

pality as have been sold or whose sale has been contracted for are considered obligations of the city, and only as to such is provision made to meet such obligations by taxation.

ID.—TAX FOR INTEREST AND REDEMPTION OF UNSOLD BONDS MAY BE RECOVERED.—Under the provisions of such charter, as well as by general law, the municipality is authorized to levy a tax only for those bonds which have so become an obligation of the city. A tax levied for the payment of the interest on and the redemption of bonds which had not been sold or contracted to be sold at the time of the levy is unlawful, and the recovery of the amount paid thereon under protest may be had under the provisions of section 3804 or section 3819 of the Political Code.

ID.—INCONVENIENCE TO CITY.—The fact that the city might be inconvenienced by such a limitation on its taxing powers does not justify a different construction of its charter.

ID.—TAX LAWS MUST BE STRICTLY CONSTRUED.—Any attempt on the part of the state, or of one of its subdivisions, to take the property of an individual for public purposes by way of taxation, must find an express statutory warrant, and all laws having this object are to be construed strictly in favor of the individual as against the state.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

J. P. Langhorne, George W. Lane, and J. Delmore Lederman, for Appellant.

Percy V. Long, City Attorney, Jesse H. Steinhart, Assistant City Attorney, for Respondent.

HENSHAW, J.—This is an action brought under sections 3819 and 3804 of the Political Code to recover from defendant $1,446.42 taxes paid by property owners under protest, for which verified claims were filed with the board of supervisors seeking a refund. The taxes so paid were levied by the supervisors in the general levy of the city and county of San Francisco for municipal purposes for the fiscal year 1904–05. They were levied for the purpose of raising money wherewith to pay interest on and to provide a redemption fund for certain municipal bonds. The issuance of these bonds had been voted upon favorably at an election called for

that purpose, and upon January 25, 1904, an ordinance was passed ordering their issue. In *Law* v. *City and County of San Francisco,* 144 Cal. 396, [77 Pac. 104], it was held that bonds for one of the purposes—namely, The Telegraph Hill Improvement, had not been voted by the people. As to these bonds the tax levied for interest and sinking fund is admittedly void. This, however, is a minor consideration. The principal ground of attack is that at the time of the tax levy concededly none of the bonds had been sold or contracted to be sold, and that therefore there then existed no bonded indebtedness legally authorizing such tax levy. The facts are conceded; the conclusion disputed.

The municipality, respondent herein, first contends that the taxes were voluntarily paid and therefore not the subject of an action for recovery. (*Dear* v. *Varnum,* 80 Cal. 89, [22 Pac. 76].) Further, it is contended that section 3819 of the Political Code limits the right of action to attacks upon the assessment and that in the case at bar the attack is upon the tax levy. This is entirely too narrow a construction to be put upon this provision of the code. (See *Hellman* v. *City of Los Angeles,* 147 Cal. 653, [82 Pac. 313].) Moreover, the allegations of plaintiff's complaint bring him within the provision of section 3804 of the Political Code. Herein the complaint alleges that the plaintiff's assignors did within one month after their payment of the taxes file with the board of supervisors verified claims and demands for the repayment of the taxes so paid under protest, and that the same has not nor has any part thereof been repaid or refunded. This allegation is not denied, and, additionally, is found by the court to be true.

Respondent's position is thus stated from its brief:

"First. That the fact that a debt was not an existing debt at the time of the tax levy would not constitute an objection to the tax levy itself, since the entire taxation scheme of the city and county of San Francisco is based upon an estimation of debts to be incurred, but not actually incurred at the time of the tax levy.

"Second. That the fact that the bonds might never be sold would not be a proper objection to the tax, because practically the greater part of every tax levy under the charter

of the city and county of San Francisco is designed to meet contemplated expenses which may never be incurred.

"Third. That neither the constitution nor the charter prohibit a tax such as the tax in this case.

"Fourth. That to hold in favor of plaintiff would be to establish a doctrine that would seriously impede the sale of municipal bonds."

The first three propositions may be considered together. Under the first proposition it is pointed out that a tax levy under the charter of the city and county of San Francisco is to a very large extent anticipatory. The auditor transmits to the supervisors "an estimate of the probable expenditures of the city and county government for the next ensuing year." (Charter of San Francisco, part 3, chap. 1, sec. 3.) Other provisions are pointed out, all showing that the tax levy to meet the running and operating expenses of the city and county of San Francisco is not to meet existing obligations, but is based upon estimates of future expenses and the levy is to meet such expenses. Respondent's position in this regard is unquestionably true. True it is that neither the constitution of the state nor the charter in express terms prohibits such a tax as was here levied. It does not follow, however, as declared in respondent's second proposition that because the greater part of the tax levy under the charter of the city and county of San Francisco is designed to meet contemplated future expenses which may never be incurred, therefore the tax levy for bonds unsold and uncontracted for is valid. While there is no express inhibition in the constitution nor in the charter against the levying of a tax under the indicated circumstances, certain general principles of law forbid it. While it is true that under charter authorization the costs of the municipal government are estimated in advance and taxes levied to meet them, and while it is true in a limited sense that the obligation for which a particular tax is levied may not be incurred, as that the taxes collected for street assessment may be greater than the amount actually expended; even when this results, no injury follows to the taxpayer. The funds are carried over and serve to reduce the general tax levy of the succeeding year. When it comes, however, to the funded indebtedness of the city the law makes special provision in many forms for the payment of

the principal and interest of such obligations. From the beginning to the end, elsewhere, as well as in the charter provisions, such a bonded indebtedness or obligation does not exist and is not recognized as a funded obligation unless the bonds themselves have actually been sold or their sale contracted for. "The debt represented by any bond would not exist or be created until the bond is issued by the company, that is, delivered to a third person for a valuable consideration." (*Merced R. & E. Co.* v. *Curry,* 157 Cal. 730, [109 Pac. 264] ; *Dudley* v. *Board of Commissioners,* 80 Fed. 672, [26 C. C. A. 82] ; see, also, *Clark* v. *Los Angeles,* 160 Cal. 45, [116 Pac. 722].) While none of the charter provisions bears specifically upon bonds of the character here voted, yet throughout the charter wherever bonds are mentioned only those bonds which have been sold or whose sale has been contracted for are considered obligations of the city, and only as to such is provision made to meet such obligation by taxation. Thus the charter deals elaborately with the issuance of bonds to pay for public improvements, provides how such bonded indebtedness may be voted and incurred, provides that such bonds when issued may be sold from time to time by the supervisors as required, and provides (sec. 12, art. 12) that at the time of the annual tax levy the supervisors shall levy and collect annually a tax sufficient to pay the annual interest on such bonds and also the proper aliquot part of the *indebtedness so incurred.* Again, in section 2 of article 3, the auditor in making up his estimate shall "state the amount required to meet the interest and sinking funds for all *outstanding funded debts.*" Article 3, section 2, provides that the general tax levy "exclusive of the state tax and the tax to pay the interest and maintain the sinking funds of the *bonded indebtedness* of the city and county" shall not exceed a given amount. Section 14 of article 3 provides that the supervisors shall from time to time provide "for the payment of the interest and principal of the *bonds for which the city is liable.*" Thus, without further citations, it is made certain by the charter provisions, as it is under general law, that only for those bonds which have become an obligation of the city may a tax be levied. Were the construction contended for by respondent to prevail, it might result—and we are advised in this case it has resulted—in grave injustice to the

taxpayer. The city might levy taxes year by year for bond interest and bond redemption and never sell a bond. At the end of each year it might transfer this fund to its general fund and use it for other purposes. At the end of any number of years of such practice, if the bonds eventually should be sold, the taxpayer would still have to pay into the treasury the full amount for interest and redemption. Aside from the hardship to the taxpayer, this would be to countenance a flat though indirect violation of the charter itself. The supervisors might make a general tax levy to the full amount permitted by the charter and by the indirect method of this unauthorized bond tax levy secure from the taxpayer large sums of money for the sole purpose of transferring it to the general fund, and so by indirection defeat the express mandate of the law. Finally, upon this point it may be well to give the language of this court in *Merced County* v. *Helm,* 102 Cal. 165, [36 Pac. 399]:

"Any attempt on the part of the state, or of the county, as one of the subdivisions of the state, to take the property of an individual for public purposes by way of taxation, *must find an express statutory warrant,* and all laws having this object are to be *construed strictly* in favor of the individual as against the state."

To the argument of inconvenience advanced by respondent under the fourth head, sufficient answer may be made first, by saying that an inconvenience to the city does not justify the despoiling of its taxpayers, and, second, by reference to *Johnson* v. *Williams,* 153 Cal. 368, [95 Pac. 655].

For the foregoing reasons the judgment is reversed and the cause remanded.

Shaw, J., Angellotti, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.