## MOYLE v. BOARD OF COM'RS OF SALT LAKE COUNTY et al.

### No. 3331. Decided Feb. 5, 1919. (178 Pac. 918.)

1. HIGHWAYS—IMPROVEMENT—AUTHORITY TO CONSTRUCT. In view of Comp. Laws 1917, sections 1400x24, 1400x27, giving the board of county commissioners power to maintain, erect, construct, etc., public roads within the county, outside of incorporated cities, and to enact proper laws and regulations for such purpose, and section 1400x1, giving them power to create and change road districts, such board has authority to macadamize, gravel, construct, and maintain roads outside of incorporated cities and towns. (Page 354.)

2. COUNTIES—POWER TO INCUR DEBT—"COUNTY PURPOSE." Comp. Laws 1917, section 1414, conferring power upon the county commissioners to "contract a bonded indebtedness," implies power to issue bonds for any authorized "county purpose," not exceeding the constitutional debt limit provided in article 14, section 4, and the improvement of highways is such a purpose in view of sections 1400x1, 1400x24, 1400x27.[1] (Page 355.)

3. COUNTIES—COUNTY BOARD—POWERS OF. The fact that by Comp. Laws 1917, sections 2830-2835, county commissioners have the power to divide the county into special road districts for the improvement of county roads, and to apportion the costs to abutting and adjacent property, does not affect their right to create a bonded indebtedness, as provided for in Comp. Laws 1917, section 1414. (Page 357.)

4. TAXATION—DOUBLE TAXATION—BASIS—"COUNTY." Bonding the county for improvement of highways outside the city limits does not constitute double taxation merely because the city property owner must pay the cost of paving the streets within the city, as such bonding is not based on direct or special benefits, and the city is part of the county for all county purposes. (Page 358.)

5. COUNTIES — BONDS — ELECTION NOTICE—SUFFICIENCY. A notice calling for a special county bond election, which states the purpose as being the erection, improvement, etc., of a large number of specifically described roads, and the necessary culverts and bridges for same, is not invalid for failure to state the character of the contemplated improvements.[2] (Page 358.)

6. COUNTIES—BONDS — ELECTION NOTICE — SUFFICIENCY. A county bond election notice is not invalid for failure to specify the polling

---

[1] *Los Angeles & S. L. R. Co.* v. *Richards*, 52 Utah, 1, 172 Pac. 474.

[2] *Horsley* v. *Carbon County*, 38 Utah, 563, 114 Pac. 522.

places, election districts, and names of the election judges.[3]   (Page 359.)

7. COUNTIES—BONDS—ELECTION NOTICE—SUFFICIENCY.   In the absence of a specific limitation imposed by statute, a county bond election notice, which limits the rate of interest so as not to exceed 6 per cent., is not invalid for failure to specify a fixed rate of interest.   (Page 359.)

Application by Frank Moyle for prohibition against the Board of County Commissioners of Salt Lake County, and C. F. Stillman and others as members of the Board of County Commissioners of Salt Lake County.

WRIT DENIED.

*Ray Van Cott* for plaintiff.

*Richard Hartley*, Co. Atty., and *D. A. Skeen*, Asst. Co. Atty., *(C. C. Dey* of counsel) for defendants.

FRICK, J.

The plaintiff, as a taxpayer and elector of Salt Lake County, filed an application in this court for a writ of prohibition against the board of county commissioners of Salt Lake County and the individual members thereof, hereinafter called defendants, to prohibit them from holding a special election which has been called for the purpose of submitting to the qualified voters of said county the proposition whether certain bonds shall be issued, and whether the proceeds thereof shall be devoted to the construction, improvement, repair, and maintenance of certain specified public roads in said county, and the necessary culverts and bridges thereon.   An alternative writ was duly issued, and the defendants have appeared and have filed what they designate an answer, which, however, in legal effect, is a general demurrer, and was so treated at the hearing, and we shall continue to so treat it.

---

[3] *State ex rel.* v. *Salt Lake City*, 35 Utah, 25, 99 Pac. 255, 18 Ann. Cas. 1130, and *Horsley* v. *Carbon County*, 38 Utah, 563, 114 Pac. 522.

The application of plaintiff, stated in condensed form, is based upon substantially the following grounds: (1) That there is no law authorizing the issuance of bonds for the contemplated purpose, and hence the defendants have no power to call an election for that purpose; (2) that the defendants have no legal authority to construct, pave, macadamize, or gravel roads within the county except by creating special road districts, and by following the provisions of Comp. Laws Utah 1917, sections 2830, 2831, et seq.; (3) that the notice of the contemplated election is fatally defective in that it fails to state the character of the contemplated improvement and fails to designate the polling places and the names of the election judges, and, further, that the notice is void for uncertainty; and (4) that the defendants have no authority to issue bonds at the rate of interest stated in the notice.

The foregoing propositions were fully and ably argued at the hearing by counsel for both sides. In view of the different provisions of our statutes, the oral arguments as well as counsel's briefs have been of much assistance to us in arriving at what we deem to be a just conclusion. We shall consider the legal propositions outlined above in the order in which they are stated.

First, respecting the jurisdiction or power of the defendants, while acting as a board of county commissioners, to construct, macadamize, maintain, and gravel public roads within the county outside of incorporated cities and towns, and their jurisdiction or power to issue bonds of the county, and to sell them and use the proceeds thereof for that purpose.

Comp. Laws Utah 1917, section 1400x1, provides that "the board of county commissioners in each county has jurisdiction and power * * * to divide the county into precincts and into road, sanitary and other districts required by law; to change the same and create others, as convenience requires."

By section 1400x24 of the same compilation, such boards are given jurisdiction and power "to lay out, maintain, control, erect, and manage public roads, turnpikes, ferries, and bridges within the county outside of incorporated cities."

And by section 1400x27 ''to enact all laws, ordinances, and regulations not in conflict with the laws of the state for the control, construction, alteration, repair, and use of all public roads and highways in the county outside of incorporated cities, and for the prevention of the waste of water flowing from artesian wells in the county.''

There are other cognate provisions, which it is not necessary to set forth here.

In view of the foregoing explicit provisions, we deem it unnecessary to enter upon an extended argument to show that the defendants have complete jurisdiction and power to construct, improve, and maintain all public roads in the county outside of incorporated cities and towns.

It is, however, also contended that defendants are without jurisdiction or power to call an election to vote bonds for the purposes aforesaid, and are without power or jurisdiction to issue and sell bonds and to. devote the proceeds thereof for such purposes. Comp. Laws Utah 1917, section 1414, so far as material here, provides:

''The board of county commissioners may contract a bonded indebtedness other than such as is authorized by section 1410 as follows: The board shall by order specify the particular purpose for which the indebtedness is to be created, and the amount of bonds which it is proposed to issue; and shall further provide for submitting the question of the issue of said bonds to the qualified electors of the county, at the next general election or at a special election to be called by the board for that purpose. * * * If a majority of those voting thereon shall have voted in favor of incurring such debt, and not otherwise, the board may proceed to issue and sell the amount of the bonds specified, which bonds may be in registered or coupon form, and the board shall levy the tax necessary to pay the interest and to create a sinking fund for the payment of said bonds in each and every year after their issue, until the indebtedness is finally paid.''

It is also provided in said section that the money derived from the sale of the bonds must be applied for the purpose or purposes specified, and for no other. Section 1410, which is referred to in the foregoing section, merely authorizes the

issuance of refunding bonds.

Section 1414 thus confers full and complete power and authority upon the county commissioners of the several counties of this state to "contract a bonded indebtedness," which necessarily implies that they may issue the bonds of the county evidencing such indebtedness if done pursuant to the provisions of that section. There is no limitation in that section except that no bonds shall be issued unless authorized by a majority of the qualified electors of the county at a general or special election. There is, however, a limitation which is necessarily implied which is that such a bonded indebtedness cannot be created except for a legitimate county purpose. In view, therefore, of the sweeping language authorizing the creation of a bonded indebtedness, the only judicial question is what constitutes a county purpose.

If, therefore, the purpose for which the bonded indebtedness is sought to be created is in fact and in law a county purpose, the courts cannot interfere. This court in a very recent case has held that the "construction, maintenance, and repair of county roads is a county purpose." *Los Angeles & S. L. R. Co* v. *Richards*, 52 Utah, 1, 172 Pac. 474. We entertain no doubt respecting the correctness of that conclusion, and to that effect are the authorities. See Independent *District* v. *Ada County*, 24 Idaho, 416, 134 Pac. 542; *Johnson* v. *Williams*, 153 Cal. 368, 95 Pac. 655.

In view of what has been said, it is not necessary to pursue further plaintiff's contention respecting the limited powers of counties and county commissioners generally. Neither can we see any reason why the language of section 1414 should not be given a fair and reasonable construction and application. In view of the constitutional provision of this state contained in article 14, section 4, where it is provided that "no county shall become indebted to an amount, including existing indebtedness, exceeding two per centum" of the value of the taxable property in such county, and, further, that no such indebtedness shall be contracted at all except for a "strictly county purpose," there is, there can be, no valid reason for a construction different than the one just stated.

There are other limitations, however, to which it is not

necessary to refer.

We have thus clear and well-defined limitations beyond which no indebtedness may be created, even by the express consent of the taxpayers. In view of that, no unreasonably strict construction of the powers conferred by section 1414 should be indulged.

We are of the opinion, therefore, that ample power and jurisdiction is vested in the defendants, as county commissioners, to call the contemplated special election for the purpose before stated.

It is, however, insisted that the Legislature, in adopting the provisions of chapter 120, Laws Utah 1909, which now constitutes sections 2830 to 2835, Comp. Laws Utah 1917, thereby intended to limit the power of the county commissioners of the several counties to the method there provided for        3
paving, macadamizing, and repairing county roads.
That chapter provides that county commissioners ''shall have the power to divide the county into special road districts as occasion may require'' for the purpose of macadamizing, paving, and graveling county roads. The act also provides that the costs incident to making the improvement aforesaid shall be apportioned to the abutting and adjacent property as provided in said chapter. Assuming, without deciding, that chapter 120 aforesaid is valid and enforceable in all respects, yet in our opinion it in no way affects the right of the county commissioners of the several counties in this state to create the bonded indebtedness provided for in section 1414, supra. There may be certain portions of a particular county, or of every county for that matter, which may require special road districts for the purposes mentioned in chapter 120. That may be so even though the constitutional debt limit has been reached. In view that the cost of construction of the roads in such special districts is apportioned to the abutting and adjacent lands the same as in improving city streets, the property is deemed to be directly benefited by the improvement to the extent of the cost. Be that as it may, however, that method is merely an additional or cumulative one, by which county roads in special districts may be constructed, improved, and maintained. See *Naylor* v. *McColloch*, 54 Or. 305, 103 Pac. 68,

where a similar question was presented, and was determined against plaintiff's contentions.

In this connection plaintiff also insists that the proposed indebtedness would constitute a double burden of taxation upon the property owners within the incorporated limits of Salt Lake City, since they are already required to pay for the cost of paving the streets abutting upon their property. There is no merit to that contention. The basis of the contemplated indebtedness is not one of direct or special benefits, and, in view that Salt Lake City is necessarily a part of Salt Lake County for all county purposes, the objection is groundless.

It is next contended that the notice calling for the special election is fatally defective for the reasons we have stated. The notice in question, in part, reads as follows:

"Shall negotiable coupon bonds of Salt Lake county, state of Utah, in the sum of $1,500,000, payable in not to exceed twenty years from the date of their issue, bearing interest at the rate of not to exceed six per cent. per annum, interest payable semiannually, be issued and sold by the board of commissioners of Salt Lake county, for the particular purpose of defraying the expense of laying out, erecting, constructing, and maintaining the following specified described public roads and highways within the county of Salt Lake, state of Utah, outside of incorporated cities, including the expense of graveling, macadamizing, and paving the same, and including the expense of erecting all necessary culverts and bridges therein and thereon?"

The notice then sets forth in detail the particular roads that are to be improved, with the necessary culverts and bridges thereon. That, it seems to us, is all that the statute requires. We cannot see how nor in what way any taxpayer could require a more specific statement, or how he is or can be prejudiced by the statement as given, or could be benefited by a more specific statement. It is, however, suggested that the notice does not enumerate the number nor the character of the bridges that are to be constructed. The notice does, however, in specific terms, state that all the necessary culverts and bridges are to

be constructed on the roads enumerated. It would seem that in the very nature of things that would necessarily be implied where, as here, it is contemplated to improve a large number of public roads many miles in extent. Bridges and culverts are necessarily a part of every public road. We held in *Horsley* v. *Carbon County*, 38 Utah, 563, 114 Pac. 522, that bonds for the construction of roads and bridges are issued but for one object or purpose. It is there said:

"True, it was stated [in the notice] that $25,000 were for certain bridges, and $5,000 for certain roads. But the purpose was one general object. A bridge across the streams in the country in question without some kind of a highway would be useless. A highway without bridges over the streams would be impracticable. Both are but parts of one general object."

While we do not wish to be understood that conditions may not be such as to require a more specific statement in case the construction of a particular bridge across a particular stream was contemplated, yet in view that the object expressed in the notice in question is clear and manifestly for the purpose of improving a large number of roads, and the necessary culverts and bridges as a part of such roads, the notice is not vulnerable to the objection urged against it.

It is, however, contended that the notice ought to specify the polling places and the election districts, and give the names of the election judges. That question has been determined adversely to plaintiff's contention in at least two cases, namely, *State ex rel.* v. *Salt Lake City*, 35 Utah, 25, 99 Pac. 255, 18 Ann. Cas. 1130, and *Horsley* v. *Carbon County*, supra.

Finally, it is urged that the notice is defective because it does not specify a fixed rate of interest but merely limits the rate so as not to exceed six per cent. Plaintiff does not contend that there is a statute fixing a specific rate of interest in cases of this kind. Neither are we aware of any such limitation. In the absence of a specific limitation imposed by statute, we cannot see why the taxpayers may not authorize any rate of interest which is not prohibited by law. It may be that the bonds can be negotiated for a rate which is less than six per cent. If that can be done, the taxpayers will

be benefited to that extent, and, if they cannot be, the rate will not exceed six per cent. in any event. We can see no legal objection to the contemplated method, nor can we see how it can affect the legality of the bonds in any way.

From what has been said it follows that the alternative writ should be, and it accordingly is, quashed, and a peremptory writ is denied, at plaintiff's cost.

CORFMAN, C. J., and WEBER, GIDEON, and THUR-MAN, JJ., concur.