STATE ex Rel. SIEGFRIEDT, Relator, v. CARBON
COUNTY et al., Respondents.

(No. 7,975.)

(Submitted May 23, 1939. Decided June 10, 1939.)

[92 Pac. (2d) 301.]

*Mr. H. A. Simmons* and *Mr. H. A. Simmons, Jr.*, for Relator, submitted an original and a reply brief, and argued the cause orally.

*Mr. Harrison J. Freebourn*, Attorney General, *Enor K. Matson*, First Assistant Attorney General, *Mr. Wesley W. Wertz*, Special Assistant Attorney General, *Mr. Claude A. Johnson*, County Attorney of Carbon County, and *Mr. John G. Skinner*, for respondents, submitted a brief. *Messrs. Wertz, Johnson* and *Skinner* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an original proceeding to enjoin respondents from issuing and selling funding bonds to redeem outstanding registered warrants of the county. The funding bonds are threatened to be issued and sold under Chapter 188, Laws of 1939. The warrants outstanding and which are proposed to be redeemed by the sale of the funding bonds are as follows: Road Fund Warrants in the sum of $83,709.05; Poor Fund Warrants aggregating $8,927.75, and Bridge Fund Warrants in the sum of $313.20.

They were issued between November 2, 1937, and February 28, 1939.

This proceeding questions only the right to issue funding bonds for the purpose of redeeming Road Fund Warrants. The controversy hinges in the main upon the meaning and effect of section 1617, Revised Codes; it provides: "For the purpose of raising revenue for the construction, maintenance, and improvement of public highways, the board of county commissioners of each county in this state may in their discretion levy and cause to be collected a general tax upon the taxable property in the county of not more than five (5) mills on the dollar, which shall be payable to the county treasurer with other general taxes. There is also established a general road tax of two dollars ($2.00) per annum on each male person over the age of twenty-one (21) years and under the age of fifty (50) years, inhabitant within the county, and payable by each person liable therefor at any time within the year. The collection of these taxes shall be under the direction of the board of county commissioners; taxes from freeholders to be collected the same as other taxes, and from non-freeholders as commissioners may direct; provided, that the foregoing provisions of this section shall not apply to incorporated cities and towns which, by ordinance provide for the levy and collection of a like general tax and a like special tax within such cities and towns for road, street, and alley purposes. All moneys collected under the provisions of this Act shall belong to the general road fund of the county."

By virtue of this section the road warrants, it is claimed by relator, are an obligation of that part of the county outside of incorporated cities and towns, or at least outside the city of Red Lodge wherein he is a taxayer, whereas the bonds proposed to be issued will be an obligation of the entire county; and thus, in effect, the proposed bond issue will be shifting the obligation of a part of the county to the entire county, and that, as to him, he will be subjected to double taxation because he has already met the like general tax imposed by the city under section 1617, Revised Codes.

In addition to Chapter 188, supra, previous statutes also authorize the funding of Road Fund Warrants. (Secs. 4630.1 et seq., Rev. Codes, as amended by Chap. 135, Laws of 1937.) Section 4630.23 provides: ''All bonds issued under the provisions of this Act shall be legal and valid obligations of the county issuing the same and the full faith and credit of such county are hereby irrevocably pledged for the prompt payment of both principal and interest thereof as the same became due.''

While Chapter 188, Laws of 1939, does not specifically provide ▮▮ that the funding bonds shall be obligations of the county, it is clear that the legislature so intended. That chapter contains this clause: ''All of the laws of this State governing the issuance, sale and exchange of county bonds, levying of taxes for payment of principal and interest thereof, and payment and redemption thereof, so far as applicable, shall apply to such bonds.'' (Sec. 1.) Clearly, then, the proposed funding bond issue has the sanction of the legislative assembly. If the bonds cannot be sustained, it must be because the laws which authorize their issuance are unconstitutional.

Under repeated decisions of this court, legislative Acts are presumed to be valid. Our duty is to uphold them, if possible, and to condemn them only when they are in clear conflict with some constitutional provision. In considering the question involved it becomes important at the outset to consider the effect of section 1617, supra. That section authorizes the county commissioners to make a maximum levy of five mills for the construction, maintenance and improvement of public highways, and also a general road tax of $2 annually on each male person inhabitant of the county over the age of twenty-one years and under the age of fifty years; it then exempts incorporated cities and towns from the operation of the law when such cities and towns have by ordinance provided for the levy and collection of a like general and a like special tax for road, street and alley purposes.

The county levy for each of the years 1937 and 1938 in Carbon ▮▮ county was five mills. The city levy for road, street and alley purposes was not as large as the county levy, but so far as this case is concerned, that circumstance is immaterial.

The only exemption accorded to city property by section 1617 is exemption from the five mill levy therein provided for. The proposed bond issue requires a separate and special levy (sec. 4630.25), over and above the five mill levy provided for in section 1617. The question then is, Does the Constitution prohibit the legislature from authorizing the county commissioners to levy a tax on all property in the county to meet the principal and interest on the proposed bond issue?

"It is not necessary that the highway be within the limits of the territorial subdivision of the state on which the burden of its construction and maintenance is imposed, provided such subdivision is benefited thereby. So property in a city may be taxed for the construction and maintenance of highways situated wholly outside of its corporate limits, but within the taxing district of which it is a part. Moreover, it is for the legislature and not the courts to determine what property is benefited under such circumstances, and city property is sometimes specially exempted in whole or in part from such taxation. Road or taxing districts may be formed without regard to political or municipal subdivisions of the state. A constitutional requirement of uniform and just taxation is met when the rate of assessment and taxation is uniform and just throughout the district so formed.

"Since a township and a city embraced within its territorial limits are wholly distinct municipal corporations and are organized for different purposes, each may exercise the taxing power for road purposes within its own territorial limits without reference to the exercise of like powers by the other, and hence the fact that a statute authorizing the levy of a tax for road purposes by townships does not exempt property within cities embraced therein, which also have a right to levy taxes thereon for the same purposes, does not render it invalid as violating constitutional provisions requiring uniformity of taxation and prohibiting double taxation." (13 R. C. L. 160, 161.) To the same effect is 29 C. J. 730.

In the note appearing in 2 A. L. R. 746, the author states "The legislature, in the exercise of the power of providing for the

construction and maintenance of public highways, may enact laws apportioning the cost on such political subdivisions as it may see fit.'' And on page 751 of 2 A. L. R. he states: ''It being within the power of the legislature to determine in general, within constitutional limits, on what persons and property the cost or expense of constructing and maintaining highways shall fall, where a city or an incorporated village lies within a county or town [township?] which composes an entire taxing district, a statute authorizing the taxation of the city or village is not unconstitutional because of the fact that the proceeds of the tax are expended on the roads wholly without the city or village limits.'' Many cases are there cited in support of the text.

In *Shoshone Highway Dist.* v. *Anderson*, 22 Idaho, 109, 125 Pac. 219, 223, it was said: ''Where * * * the Legislature of the state, exercising its power over the subject of taxation, passes an Act which provides for the creation of a municipality such as a highway district, and authorizes such district to tax the property of said district for the purpose of raising funds for the construction and maintenance of highways within such district, and such district organizes as such, and includes an incorporated city, town, or village, which city, town, or village has, by reason of its incorporation as such, power also to levy a tax within such city, town, or village, the taxation made by the highway district under the authority of the Legislature is not a double taxation upon the property within the city, town, or village. The construction of highways leading to a city, town, or village from a county district is not only a benefit to the county outside of such city, town, or village, but is a like benefit to such city, town, or village, and such taxation, being one based upon benefits, is not prohibited by any constitutional provision.''

The Supreme Court of the United States in *Memphis & Charleston Ry. Co.* v. *Pace*, 282 U. S. 241, 1 Sup. Ct. 108, 109, 75 L. Ed. 315, 72 A. L. R. 1096, said: ''The construction and maintenance of serviceable roads in any community is a matter in which the whole community have an interest and is a typical public purpose for which property may be taxed by the state. (*Missouri P. R. Co.* v. *Western Crawford Road Imp. Dist.,* 266

U. S. 187, 190, 45 Sup. Ct. 31, 69 L. Ed. 237 [243].) Whether the tax shall be state-wide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing district, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment [U. S. C. A.]."

Modern methods of highway transportation justify extension or enlargement of the area benefited from highway construction far beyond what was permissible when such transportation was limited to horsedrawn vehicles. The "hitchhiker" of 50 years ago was content to cross a county in a week's time, now he expects to cross the continent in less time. Hence, had the legislature seen fit to do so, it might have authorized the county levy of five mills to be extended to city property as well. This is expressly authorized by the Constitution. (Article XII, section 11.) The question seems to be one of legislative discretion. (1 Cooley on Taxation, 4th ed., p. 698.)

The fact that the legislature by section 1617 exempted city property from the payment of the five mill levy did not obligate it to make the same exemption as to any tax in excess of the five mill levy. It is no more double taxation for city property to bear its share of a levy in excess of five mills, than it is for county property outside of a city. Generally, the need for the additional levy—the need for refunding outstanding warrants—is because of tax delinquencies.

Most of the taxpayers of the county with property outside of the city have paid the five mill levy. Their claim of double taxation is just as potent as that of the owners of city property. We think in neither case is there any constitutional barrier to the imposition of the tax. Section 1617, so far as taxpayers in the city are concerned, does no more than to give to the city taxpayers a receipt for the payment of the five mill county levy, when the city has by ordinance imposed a like tax for road, street and alley purposes. As to any excess levy, city property owners stand on the same basis under the laws here in question, as rural

property owners of the county who have paid the five mill levy and who hold a receipt for actual payment thereof.

It is contended that the bond issue will violate section 13 of Article XV of the Constitution, reading: "The legislative assembly shall pass no law * * * retrospective in its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already passed." This contention is not well founded. When the five mill levy was made by the county in 1937 and 1938, and when the city was exempted from its payment, section 4630.1, as amended, was already in effect, authorizing the board of county commissioners of every county, under the conditions provided for in the existing statutes, to issue, negotiate and sell bonds on the credit of the county, "for the purpose of funding, paying and retiring outstanding county warrants lawfully issued against the county general fund, road fund, bridge fund or poor fund, when there is not sufficient money in the fund against which such warrants are drawn to pay and retire such warrants and the levying of taxes sufficient to pay and retire such warrants within a period of three (3) years would, in the judgment of the board of county commissioners, work a hardship and be an undue burden upon the taxpayers of the county."

Hence, if we treat county road fund warrants in the normal functioning of the county as an obligation only upon that part of the county situated outside of incorporated cities which levied taxes for their own roads, streets and alleys, yet the law in effect when the taxes were imposed in 1937 and 1938 served notice upon taxpayers of the city that the county commissioners might issue bonds on the credit of the whole county for the redemption of county road fund warrants, and when they paid the city taxes for the years 1937 and 1938 they paid with knowledge of the law in that respect. There is thus no imposition of a new liability on the people of the city in respect to transactions or considerations already passed, within the meaning of section 13, Article XV of the Constitution. For the same reason there is no taking of property without due process of law.

We hold that the laws authorizing the proposed bond issue are valid, and that the bonds, if and when issued pursuant to the statute, will be valid obligations of the county issuing them. We are mindful that there is some authority which seems to sustain the opposite view. Upon careful analysis, however, they are found to be distinguishable. The case of *Devine* v. *Board of Supervisors of Sacramento County*, 121 Cal. 670, 54 Pac. 262, has been pressed upon our attention as one at variance with our holding here. In that case a statute similar to our section 1617 was considered. There it was proposed to issue bonds for improving a public road. The court held that this could not be done. The reason for so holding, however, was because the statute did not authorize it. The only statute relied upon in that case as authorizing it was one reading: "And any county may incur or refund a bonded indebtedness for any purposes for which the Board of Supervisors are herein authorized to expend the funds of said county." (Stats. 1897, p. 460, sec. 25, subd. 13.) The court held that since the board of supervisors could not expend county funds for road construction but only road funds acquired from a tax upon only a part of the property of the entire county, the statute did not authorize the bond issue. Here, as above noted, we have express statutory authority for the issuance of bonds to take up outstanding road warrants.

The writ applied for is denied and the proceeding dismissed.

Mr. Chief Justice Johnson and Associate Justices Morris, Stewart and Erickson concur.