## J. H. WESTON *v.* HANCOCK COUNTY.

### On Motion to Advance.

[54 South. 307.]

1. SUPREME COURT. *Advancement of case for hearing.* *Code* 1906, § 4907.

   Where a case of public importance to the country from which it comes is asked to be advanced for argument and the supreme court is on the call of that district, the court may advance such cause for hearing though such case may not come under the preference cases mentioned in section 4907, Code 1906.

2. SAME.

   When an oral argument is asked in any case, by the consent of both parties, the request may be withdrawn at any time and the case be submitted on briefs.

   Under Code 1906, § 331, authorizing the issuance of bonds by a county for constructing public roads, the board of supervisors may issue such bonds, regardless of the method adopted for working the roads.

3. SAME.

   The term "constructing public roads" quoted in the above section is used in its most comprehensive sense and does not mean simply the building of new roads, but means also the maintenance and betterment of roads already in existence.

4. COUNTIES. *Bonds.* *Resolutions.*

   A resolution of the board of supervisors providing for the issuance of bonds for a certain amount, or "so much thereof as may be necessary," followed by the issuance of bonds in a less amount than the amount named in the resolution, is not void for failure to state the exact amount of the bonds which the board intended to issue.

5. CODE 1906, SECTION 333.

   Under Code 1906, § 333, providing that before the issuance of bonds, the board of supervisors shall publish notice of the proposal to issue them in a newspaper for three weeks next preceding, etc., it is immaterial that such notice was published longer than the time prescribed by law.

> While section 333, Code 1906, requires notice to be published for three weeks next preceding, etc., it does not mean that if the board fails to issue the bonds at the meeting of the board next after the publication of the notice, it may not do so at some future time.  The board having acquired jurisdiction by publishing the notice and no protest having been made can issue the bonds at any time in their discretion.

6. CONSTITUTION 1890, SECTION 85.   *Laws* 1910, *chapter* 150.

> Section 85 of the Constitution of 1890 is not violated by Laws 1910, chapter 150; this section of the Constitution merely provides that the legislature shall provide by general law for the working of public roads, by contract, or by county prisoners, or both, etc.  This section does not provide an exclusive method for working the public roads; other ways of working the public roads may be authorized by the legislature and adopted by the board of supervisors.

APPEAL from the chancery court of Hancock county. *Hon. T. A. Wood,* Chancellor.

Suit by J. H. Weston against Hancock county.  From a decree dismissing the bill, complainant appeals.

The facts are fully stated in the opinion of the court.

*E. J. Gex,* for appellant.

1st.  The first ground of objection is that while working of roads under the contract system that the board of supervisors of said county attempted to issue bonds for the purpose of working roads and building bridges, and the bill alleges that having chosen to work the roads by contract that the county had no right to issue bonds for the purpose of working public roads.  Section 4441 of Mississippi Code, provides for working of roads by contract and section 4443 of the same Code provides the method of raising money for the purpose of working the roads, but nothing is therein said as to the issuance of bonds for the working of said roads.  It is true that section 331 of the said Code allows the board to issue bonds for building bridges and constructing roads, but this section does not apply to those counties operating under the contract system, for the reason a separate method is

provided for the working of roads under that system in section 4443.

2nd. It is next contended that the notice of the issuance of the said bonds is defective in not stating the amount that the bonds will be issued for and in not stating what amount will be used for building bridges and what amount will be issued for working roads.

We find the notice reads as follows:

"Be it resolved that it is the purpose of the board of supervisors of Hancock county to issue the bonds of said county to the amount of $125,000.00, or so much thereof as may be necessary for the purpose of working roads and building bridges in and for said Hancock county, state of Mississippi."

This notice is not sufficient because it does not state the exact amount of bonds to be issued nor does it state how much to be used for roads and how much for bridges. We find the rule laid down in the cases of *Hillsborough County* v. *Henderson*, 33 So. 997; *Smith et al.* v. *Mayor, etc. of City of Dublin*, 39 S. E. 327.

From the above authorities it will be seen that the notice in this case does not follow the requirements laid out in the list of authorities cited by us.

3rd. Next ground of attack is that the notice of the issuance of said bonds was not published three weeks next preceding the issuance of the bonds as provided for in section 333, Mississippi Code. The rule laid down for the issuance of bonds we find to be in the 21st Am. and Eng. Ency. of Law, 2nd Ed., p. 45, to be as follows:

"Conditions, Precedent to Issuance of Bonds. In general: Where the statute authorizing the issuance of municipal bonds prescribed the mode in which the power is to be exercised the municipality can only in the manner prescribed, and all conditions imposed by the legislature or constitutional provisions, with regard to the exercise of the power must be strictly complied with." *City of Dawson* v. *Dawson Waterworks Co.*, 106

Ga. 732, 32 S. E. 907. We would cite the court to the case of *Davis et al.* v. *Dougherty County et al.*, 42 S. E. 764.

4th. The next objection raised in the said proposed issuance is that the board did not issue the bonds at the August meeting but that the said bonds were ordered issued at the September meeting.

5th. The next objection to the issuance of the said bonds is that while the notice of the proposed issuance of the bonds was still pending and before the bonds were issued that the board of supervisors repealed the method of working the roads by contract and adopted the method provided for in the Laws of Mississippi 1910, ch. 150.

*McDonald & Marshall,* for appellee.

Appellant's first objection is that, while operating under the "Contract System," the board had no right to issue bonds and that the revenue for the purpose of working roads could be derived only under section 4443, Code of 1906. Appellee's response to the objection is that while acting under the "Contract System" or under said chapter 150 it had a right under section 331 of the Code of 1906, to issue bonds; and besides, section 4469 instead of 4443 is the law relative to raising funds applicable to Hancock county in July, 1910. Either section provides only the mode of taxation and the board had the right to issue bonds and the payment of the bonds would be by the mode of taxation prescribed in said section. Whether acting under the "Contract System" or under chapter 150 of the Laws of 1910, the board of supervisors could, in either event, issue bonds under section 331 and, therefore, the passing from one system to the other, pending the notice of the issuance of the bonds, did not affect the county's rights.

The second objection is that the notice does not state the amount to be used for roads and the amount for building bridges but that the amount for both purposes

is lumped, and that the notice states that one hundred and twenty-five thousand dollars, or so much thereof as may be necessary, will be issued and that only one hundred thousand dollars was ordered issued. We content ourselves with stating that this objection has been fully answered and overruled in the case of *Kemp* v. *Hazlehurst*, 80 Miss., page 443.

The third objection is that the notice of the intention to issue bonds was not published for three weeks preceding the August meeting, which was the first Monday and the first day of the month. The notice had to be published for three weeks, and "three weeks" meant there must be three weeks between the first insertion, which was July 9th, and the first Monday in August, which was the first day. (See section 1607, Code of 1906.) Had July sixteenth been the first insertion there would not have been three weeks notice before the first day of August, as required by law. Therefore, the publications in the newspaper, of date July 9th, July 16th and July 23rd, constituted, under the law, the three weeks next preceding August the first.

However, if they did not, the notice was also published, as shown by the bill and admitted by the demurrer, in those three issues and also in the issue of July 30th. Appellant states that the proof of publication shows that the board intended the notice to be inserted only on the issue of July 9th, 16th and 23rd. The board intended what its order said: "According to law."

The fourth objection is that there was no order made at the August meeting, but at the September meeting. We do not think that it was incumbent upon the board to make the order at the August meeting. The notice of the intention to issue bonds at that time was for the purpose of fixing a date certain in which objecting taxpayers or others interested might appear and present objections to the contemplated actions.

Appellant contends that chapter 150 of Laws of 1910 is unconstitutional and cites section 85 of the Constitu-

tion.. It was certainly not.the intention of the framers of the Constitution to require the legislature to create simply two systems of working public roads, one by contract and the other by county prisoners, and to bind the state for all time by one of said methods. Looking to the poor results from the old overseer systems it was simply an injunction to the legislature to provide these other two means and was never intended to be exclusive of the other methods that might be provided by law.

The exhibits to the petition show that each step looking to the issuance of bonds has been carefully taken, having in view the action of this court in the case of *Kemp* v. *Hazlehurst,* and, so far as applicable to a county, using the same phraseology that was used in the orders and notices set out in full in the report of said case.

MAYES, C. J., delivered the opinion of the court.

### On Motion to Advance.

This case seems to involve the validity of a bond issue made by the county of Hancock in the Southern Supreme Court district, which is now on call before the court. A motion is made to advance this cause, as a preference case, under section 4907 of the Code of 1906. As we are now on the call of the docket for the Southern district, the district to which this case belongs, and since the case is one of public importance to the county from which it comes, without deciding whether the case falls within the above provision of the Code as a preference case, we sustain the motion and advance the cause. It is the rule of this court that, when upon the call of a particular district, cases from that district shall be heard in the order of filing. Still this rule is not so inflexible as that it cannot yield, in order to advance a cause of this nature under the circumstances here presented.

Motion sustained, leaving counsel to submit cause on briefs or fix date for oral argument agreeable to counsel for both sides, and with the consent of the court.

Where oral argument is asked in any case, by consent of both parties the request may be withdrawn at any time, and case submitted on brief. This remark is occasioned by the fact that, while no oral argument is requested in this case, there is made a motion to advance for hearing, whereas, if argument is not desired, all that was necessary was a submission of the case, and the present motion was unnecessary.

## On the Merits.

J. H. Weston, a citizen and taxpayer of Hancock county, filed a bill for the purpose of enjoining the board of supervisors from issuing certain bonds which they were attempting to issue for the purpose of working the public roads and building bridges in the county. The bill was demurred to, the demurrer sustained, and bill dismissed, from which judgment Weston appeals.

It appears that in August, 1909, the board passed an order requiring the public roads of that county to be worked by contract agreeably to the requirements of sections 4465 to 4475, Code of 1906. On the 9th day of July, 1910, following, and while working the roads under the contract system as provided above, the board passed an order declaring it to be their purpose to issue the bonds of the county in the sum of one hundred and twenty-five thousand dollars, or so much thereof as might be necessary, for the purpose of working roads and building bridges in the county. This order directed the clerk to publish a copy of the resolution "in the manner required by law," and for the purpose of notifying the taxpayers of the county of the proposed intention of the board, so that, if there was any opposition, such opposition might be presented to the board and heard at the next meeting of the board, on the first Monday in August. This notice was published for the full period of time required by section 333 of the Code. At the August meeting no protest was filed, but the board did not make an order issu-

ing the bonds until the September meeting; that is to say, the board did not order the bonds issued at the meeting next succeeding the publication of the notice of their intention, but did so at their second meeting thereafter. When the board made the order for the issuance of the bonds, it issued only one hundred thousand dollars. At this same meeting in September the board passed an order reciting substantially that, whereas, the present method of working roads by contract had proved unsatisfactory, that thereafter the method of working the roads should be as provided in chapter 150, p. 145, of the Laws of 1910, approved April 8th. The bill of complaint makes as exhibits the various orders of the board, and, in addition to the facts already stated, further alleges that it was beyond the power of the board to issue bonds while working its roads by contract.

In view of the fact that section 331 of the Code expressly authorizes the issuance of bonds "for building bridges, constructing public roads," etc., we need only give passing notice to this allegation in the bill. The above section does not limit the right of the board to issue bonds for the purpose of accomplishing its objects to any particular method adopted for the working of the roads. If the roads are worked by the old method of having an overseer, or if the roads are worked by the more modern method of contract, or if the roads are worked under the latest method prescribed by chapter 150 of the Laws of 1910, in either event it is discretionary with the board, subject to certain restrictions imposed by the law, not necessary to be here named, to issue the bonds of the county for the purpose of "building bridges, or constructing public roads." When the statute speaks of "constructing public roads," it uses the term in its most comprehensive sense. It does not mean merely the building of roads not before having an existence, but it means the maintenance and betterment of roads already in existence, and for this purpose the bonds

of the county may be issued, if authorized by the board and not vetoed by the taxpayers in the method allowed by law.

The further allegations of the bill are that the resolution providing for the issuance of bonds in the sum of one hundred and twenty-five thousand dollars, "or so much thereof as may be necessary," is void, because it does not state the exact amount of the bonds which the board intended to issue. There is no force in this contention. The board named the maximum amount that it might issue, at the same time stating, in effect, that it would issue a less amount if it thought a less amount would be sufficient. It did not issue the maximum amount named, nor did it issue an amount in excess of that permitted by the statute. The board had a right to state the maximum of the amount of bonds it intended to issue, and when it actually made the issue of bonds, it might issue a smaller amount, if, in its judgment, the smaller amount was sufficient for the county's purpose. There is nothing in the law prohibiting a board of supervisors from using its best judgment in the management of the finances of a county. Because the board gave notice that it might issue one hundred and twenty-five thousand dollars in bonds, it was not necessary for it to stick to that resolution if the county could get along on less. If no taxpayer protested against the greater indebtedness, it is reasonably certain that none would protest against the less. The only reason why the board is required to publish notice is for the purpose of giving the taxpayer an opportunity to protest. If it was not for this, to the board would be committed the discretion of issuing the bonds within the statutory limits as to amount, without notice in any way. If, then, the object of the notice is carried out in good faith, as is the case here, and the burden imposed on the taxpayer is even less than the board gave notice that they intended to impose, which greater amount has been acquiesced in by

the taxpayers, how can the taxpayers complain because their burden is less than the board said it intended to impose? Law is found in reason. Safeguards are imposed for a real purpose, not as mere technical obstructions.

A further objection urged is that the notice is defective. It is alleged that the notice was published on the 9th, 16th, 23rd, and 30th of July, but the board only authorized the notice to be published on the 9th, 16th, and 23d, and that the publication of the notice on the 30th was not placed in the order by the board, but merely left to run by the editor as a space filler; that if the notice had only been published on the 9th, 16th, and 23d of July as directed by the board, it would have left one week intervening between the 23d day of July and the 30th day of July and therefore the notice was not published for "three weeks next preceding" the first Monday in August, as required by section 333 of the Code. It plainly appears that the notice was published for three weeks next preceding the August meeting. It also appears that the order of the board directing the clerk to publish the notice directed him to publish it in conformity to the requirements of law, and the clerk did so. If the taxpayers got the notice in the manner and for the time required by law, by direction of the board, surely they cannot complain that they got more notice than they were legally entitled to.

While section 333 of the Code requires notice to be published for three weeks "next preceding," it does not mean that, if the board fail to issue the bonds at the meeting of the board next after the publication of the notice, it may not do so at some future time. When the board has published the notice required by section 333 of its intention to issue the bonds of the county for the purposes named in section 331 for three weeks next preceding any meeting of the board, without protest, within that time, of ten per cent. of the adult taxpayers, exclu-

sive of those who pay poll tax only, jurisdiction is acquired by the board to issue the bonds at the first meeting or any subsequent meeting of the board, as the discretion of the board may dictate, and jurisdiction is not lost by the failure to act immediately. The sole object of the notice is to give the taxpayers an opportunity to protest, and if they fail to enter their protest at the first meeting it is their own fault, and it is not reasonable to suppose that they would object at a succeeding meeting; but at all events the taxpayers have had their opportunity and let it pass without objection. If it be asked how long after this publication may the board continue to leave open the issuance of the bonds, and at what time this right expires, our answer is that the board may thereäfter act at discretion. Powers of government must reside somewhere, and those in power must be trusted to carry out the powers intrusted to them in good faith and for the best interests of those whom they represent. So far as the taxpayer is concerned, when he fails to protest, the bonds then have a potential existence beyond revocation so far as he is concerned.

A further objection urged against the validity of these bonds is that the board is attempting to issue the bonds under chapter 150, p. 145, Laws 1910; whereas on the date notice was published the board was operating under the contract system of working roads and was controlled by sections 4465 to 4475 of the Code. In short, the contention is that the notice given by the board of its intention to issue bonds was for the purposes authorized by law where the roads were worked under the contract system; whereas, after the publication of the notice, the board attempted to issue the bonds for working the roads in the different way provided for in chapter 150, Laws of 1910—the argument being, therefore, that the taxpayers never have had an opportunity to protest against the issuance of bonds to be used for working the roads in the manner provided for by the Laws of 1910.

No material change was made in the road law by the Act of 1910, except as to the method of working the roads. The Laws of 1910 preserve all of the present laws on the subject of roads, simply creating another way in which the roads could be worked. The Laws of 1910 allow roads to be worked by the board through a commissioner, a method not heretofore permitted; but the essential purpose for which the bonds are authorized to be issued in both cases is for the working of the road. The bonds are to be used for the same purpose, whether issued under the Laws of 1910 or the Code chapter, the notice required to be given is the same, the rate of interest is the same, and the amount of bonds authorized to be issued may be the same; and it is our view that the fact that the board did not adopt the Laws of 1910 until the September meeting, and after the published notice, in no way affected the authority of the board to issue or the validity of the bonds when issued.

The authority to issue bonds for the purposes named in either section 331 of the Code of chapter 150 of the Laws of 1910 was not intended to be controlled by the method of working the roads adopted by the board; and, if we were to hold this, it would necessarily result in holding that, when an issue of bonds had been sold by the board for the purpose of building bridges or working public roads while the board was operating under one system, it could not change to another so long as it had not consumed all the funds raised by it while working under a particular method, because the taxpayers had acquiesced in the issuance of bonds for working of the roads only by the method in existence at the date of the issuance. This holding would hamper progress in the development of public roads. It would be out of harmony with reason, and would be contrary to the purpose and spirit of the law.

A further contention is that the Laws of 1910 violate section 85 of the Constitution of 1890 of the state. We

can see no way in which the questions in this case can involve the above section. The section of the Constitution in question merely provides that: ''The legislatture shall provide by general law for the working of public roads by contract, or by county prisoners, or both. Such law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable.'' This section of the Constitution does not provide an exclusive method for working the public roads, as a casual reading shows. Other ways of working the roads may be authorized by the legislature and adopted by the board of supervisors, and this was done by the Laws of 1910. *Affirmed.*