(August 16, 1913.)

## INDEPENDENT HIGHWAY DISTRICT NO. 2 OF ADA COUNTY, Plaintiff, v. ADA COUNTY and THE BOARD OF COUNTY COMMISSIONERS, Defendants.

[134 Pac. 542.]

PROHIBITION—ROAD BOND ISSUE—BOARD OF COUNTY COMMISSIONERS— CALLING ELECTION—PURPOSE OF—NOTICE FOR—ROADS AND BRIDGES— CONSTITUTIONAL AND STATUTORY CONSTRUCTION.

1. Where a board of county commissioners declares by resolution that in the opinion of the board it is for the best interests of the county and the public good to bond the county for $200,000 for the construction and repair of roads and bridges, and the notice calling the election recites such facts and proceeds as follows: "Notice is hereby given that on Wednesday the 25th day of June, 1913, an election shall be held according to law for the purpose of determining whether or not the said Ada County, State of Idaho, shall issue bonds in the sum of Two Hundred Thousand Dollars, the

proceeds thereof to be used in the construction, building and repair of roads and bridges within said Ada County, State of Idaho," *held*, that such notice is sufficient under the statute, and that it was not necessary to specify particularly the roads or bridges that were to be constructed or repaired.

2. Sec. 1962, Rev. Codes, authorizes the issuing of bonds by the county under certain conditions, and for the purpose of constructing and repairing roads and bridges.

3. Sec. 1968, Rev. Codes, directs that if the question of bonding the county is submitted to the voters, the board shall cause notice of the intention to hold such election to be given and such notice shall recite, among other things, the purpose for which such election is to be held, and where the notice of said election directs that the same shall be held for the purpose of determining whether bonds in the sum named in the notice shall be issued and the proceeds used in the construction, building and repair of roads and bridges within the county, such notice is sufficient.

4. By such notice the electors are fully apprised that they are called upon to vote as to whether or not bonds should be issued in the sum mentioned in the notice, for the construction and repair of roads and bridges within the county.

5. *Held*, that it was not necessary to specify in such notice the particular roads or bridges that were to be constructed or repaired by the proceeds of the sale of such bonds.

6. The board of county commissioners under this law is given a large discretion in this matter, but the presumption is that they will do their duty and construct and repair roads and bridges in the county where they are most needed and beneficial to the people of the county.

7. If the electors in a county do not desire to vote bonds where the board is given such large discretion under the law, they are not compelled to do so.

8. Where the law authorizes the issuance of bonds for the purpose of constructing and repairing roads and bridges, the statute does not mean merely the building of new roads, but it means the betterment of roads already in existence as well as the constructing of new roads and bridges, and for that purpose the bonds of the county may be issued if duly authorized by the vote of the taxpayers of the county.

9. Under the provisions of sec. 1962, Rev. Codes, bonds may be issued for the construction and repair of roads and bridges, and a notice calling such election which states such purpose substantially in the language of the statute is sufficient.

10. It will not be presumed that the board will use the funds arising from the sale of such bonds for any other purpose than

for constructing and repairing roads and bridges in said county, and if they should undertake to divert the funds to some other purpose, the taxpayer has his remedy.

11. Under the provisions of sec. 882b, the entire jurisdiction of building and repairing roads and bridges, outside of highway districts and such highways as are under the jurisdiction of the state highway commission, is given to the respective boards of county commissioners in the several counties of the state.

12. It was not necessary for the board of county commissioners to specify in said notice the amount of the proceeds of said bonds to be used for constructing and repairing bridges and the amount to be used for constructing or repairing roads.

13. Bridges are a part of the highways of the county.

14. The several parts of a road system are so related that when united they form in fact but one system and, for the purpose of submitting the question of voting such road bonds to the electors of a county, it was not necessary to indicate the amount to be used for bridges and the amount to be used for roads.

15. County roads are improvements in which the entire public is interested and benefited, although a particular individual may never use such road.

16. The county is the unit of taxation in the matter under consideration.

17. Under the provisions of sec. 15, art. 7, of the state constitution, the legislature must provide by law such a system of county finance as shall cause the business of the county to be conducted on a cash basis, and sec. 3, art. 18, provides, among other things, that said sec. 3 shall not be construed to apply to the ordinary expense authorized by the general laws of the state.

18. The issuance of the bonds in question is not prohibited by the provisions of said section, and even though the board of county commissioners may intend to illegally expend some of the proceeds of said bond issue, that does not make void the issuance of such bonds.

19. Where a systematic improvement of a road system of a county is undertaken, as in this case, and in the prosecution of that work roads and bridges are repaired and put in good condition, the expense thereof may be paid out of the proceeds of a bond issue.

20. *Held*, that the issuance of said bonds would not result in double taxation.

An original application for an alternative writ of prohibition to the board of county commissioners. Alternative writ quashed and permanent writ denied.

Harry S. Kessler, for Plaintiff.

The notice for calling for the election does not contain an adequate statement of the purpose for which the bonds are to be issued.    (*McMahon v. Board of Supervisors,* 46 Cal. 214; *State v. Carbon County,* 38 Utah, 563, 114 Pac. 522.)

Roads and bridges are clearly specified as separate objects for which bonds may be issued by sec. 1962, Rev. Codes, just as they are in other provisions of the statute, and the language of this court in the case of *Ostrander v. City of Salmon,* 20 Ida. 153, 117 Pac. 692, on page 162 of the Idaho Report, is applicable.    (See, also, *Jenkins v. Williams,* 14 Cal. App. 89, 111 Pac. 116; *Stern v. City of Fargo,* 18 N. D. 289, 122 N. W. 403, 26 L. R. A., N. S., 665.)

The present contemplated bond issue is not authorized by constitution or statute.

In *Fenton v. Board of Commissioners,* 20 Ida. 392, 119 Pac. 41, this court held that the provisions of the statute directing the levy for a specific purpose are mandatory.    And that there is a distinction between ordinary county expenses which must be met by annual levies and extraordinary expenses which can only be met by bond issues, has been several times pointed out by this court.    (*Bannock County v. Bunting,* 4 Ida. 156, 37 Pac. 277; *Dunbar v. Board of Commrs.,* 5 Ida. 407, 49 Pac. 409; *Ball v. Bannock County,* 5 Ida. 602, 51 Pac. 454; *County of Ada v. Bullen Bridge Co.,* 5 Ida. 79, 47 Pac. 818; *McNutt v. Lemhi County,* 12 Ida. 63, 84 Pac. 1054.)

The proposed bonds, if issued, will result in double taxation. (*Humbird Lumber Co. v. Kootenai County,* 10 Ida. 490, 79 Pac. 396.)

R. L. Givens, Harry Keyser and E. P. Barnes, for Defendants.

The notice is in the exact language of the statute.

The people of Ada county were fully apprised by the entry in the minutes of the county commissioners and the notices published and posted, that they were called upon to vote as to

whether or not bonds should be issued in the sum of $200,000 for the construction and repair of "roads and bridges" within the county, generally. (*Potter v. Lainhart*, 44 Fla. 647, 33 So. 251; *Stone v. Gregory*, 110 Ky. 492, 61 S. W. 1002; *Weston v. Hancock County*, 98 Miss. 800, 54 So. 307; *Corker v. Village of Mountainhome*, 20 Ida. 32, 37, 116 Pac. 108, and cases there cited.)

The word "purpose," as used in sec. 1962, Rev. Codes, and the general bond act, being art. 6, chapter 2, tit. 11, Rev. Codes, applies only to those purposes set forth in the statute, not the specific works of construction which may be carried on under one of these main purposes. We contend that throughout the act the word "purpose," is used generally to designate a class. (*Shea v. Skagit County*, 68 Wash. 233, 122 Pac. 1061; *Law v. City and County of San Francisco*, 144 Cal. 384, 77 Pac. 1014; *Jenkins v. Williams*, 14 Cal. App. 89, 111 Pac. 116.)

"The true criterion is, are the several parts of the project so related that united they form in fact but one round whole?" (*Blaine v. Hamilton*, 14 Wash. 353, 116 Pac. 1076, and cases cited therein; *Morse v. Granite County*, 44 Mont. 78, 119 Pac. 286; *Gilbert v. Canyon County*, 14 Ida. 420–449, 94 Pac. 1027.)

"A notice in substantial compliance with the statute is sufficient." (*State ex rel. Whitmore v. Carbon County*, 36 Utah, 394, 104 Pac. 222; 15 Cyc. 232, 326.) The question of lack of benefit to highway district is considered fully in *Reinhart v. Canyon County*, 22 Ida. 351, 125 Pac. 791; *Van Pelt v. Bertilrud*, 117 Minn. 50, 134 N. W. 227. County roads and bridges are undoubtedly improvements in which the entire public is interested and benefited, although the particular individual may never have occasion to use them. For administrative purposes, so far as county bonds are concerned, the county is the unit of taxation: Whatever rights the parties to this action have as between themselves as to whether or not they are entitled to contribution from the proceeds of these bonds is not a material question at this time and has no bear-

ing as to the validity of the bonds.    (*Johnson v. Williams,* 153 Cal. 368, 95 Pac. 655.)

If the present method of allowing a county to levy a general road tax which shall include the district lying within a highway district and to issue bonds which shall be a charge against the entire property of the county, including that within a highway district, and also of allowing highway districts to levy special taxes within their territory and to issue bonds chargeable against the property within their district, is unwise, unjust, or causes double taxation, relief cannot be afforded by the courts, but it is a matter of legislative enactment, and can in no way affect the validity of the bonds issued as in the case at bar.    (*State v. Board of Commrs.. etc.* (Ind.), 82 N. E. 482; *State v. Wheeler,* 141 N. C. 773, 115 Am. St. 700, 53 S. E. 358, 5 L. R. A., N. S., 1139; *Humbird Lumber Co. v. Kootenai County,* 10 Ida. 490, 79 Pac. 396.)

The legislature has provided a method of paying at least a portion of the interest on county bonds which would obviate the necessity of making a larger levy to pay the interest; this being the provision in the so-called automobile law passed at the 1913 session, providing that the license tax received from owners of motor cars may be used to pay the interest on county bonds.    This provision would absolutely relieve the plaintiff board as to any double taxation in connection with the payment of interest.    The only question of double taxation left would be by reason of the fact that the plaintiff highway district would be compelled to contribute to the sinking fund to retire said bonds.    This has been held not to be double taxation in *Reinhart v. Canyon County, supra.*    (*Shoshone Highway Dist. v. Anderson,* 22 Ida. 109, 125 Pac. 219.)

SULLIVAN, J.—This is an original proceeding in this court whereby application is made by Independent Highway District No. 2 of Ada county for a writ of prohibition, prohibiting the board of county commissioners of Ada county from issuing and selling negotiable, interest-bearing coupon bonds of said county in the sum of $200,000, which bonds were

voted by the people of said county for the purpose of constructing and repairing the roads and bridges of said county.

It is alleged in the application for said writ that the plaintiff is a highway district in said county, organized and operating under the laws of this state; that on May 26, 1913, said board of county commissioners ordered an election to be held on June 25th for the purpose of determining whether or not said county should issue bonds in the sum of $200,000, the proceeds thereof to be used in the construction, building and repairing of roads and bridges within said county; the said election was held on June 25th, and the bond issue was carried by the required two-thirds vote; that said board of county commissioners are now proceeding without authority of law and in excess of their jurisdiction, and have given notice that said bonds will be sold on July 24, 1913, and that they will sell and expend the proceeds thereof contrary to law unless restrained by a writ of prohibition; that said bonds, if sold, will be a lien upon the taxable property within said highway district and the property owners therein will be assessed according to the value of their property for the payment of interest on said bonds, and for providing a sinking fund to redeem them; that the alleged purpose for which the bonds are to be issued is indefinite and uncertain and not as required by law, and that it cannot be determined therefrom whether the roads and bridges will be of benefit to all parts of said county, and that the applicant believes that all of the proceeds of said bonds will be used outside of said highway district and not for the benefit of the residents of said district; that the defendants have not made any levy for either road or bridge fund for the year 1913, and it cannot be determined whether or not the indebtedness or liability for the construction or repair of either roads or bridges for the year will exceed the income or revenue of the county for the year, but that plaintiff is informed that if said bonds are sold, defendants will not make any levy for general road purposes, but will issue and sell said bonds and use the proceeds thereof, if not restrained by this court, in lieu of the customary levy; that the proceeds of the bond issue if sold will be used in that part

of the county outside of said highway district, and that said district has no funds for the proper and necessary construction and repairs of its roads and bridges, and if the defendant board makes no road levy, as required by law, and is permitted to issue and sell the bonds in lieu of a proper tax levy, the plaintiff will then be compelled to make a special road levy which will amount to double taxation.

The answer of said board admits many of the allegations of the application or complaint, as to what the board has done and intends to do regarding the alleged bond issue, but denies that said board acted without the law and beyond the scope of their jurisdiction in doing the acts set forth in said application, and denies that the notice of election was indefinite and uncertain, and denies that the proposed expenditure will not benefit the residents and taxpayers in said highway district; denies that the residents and taxpayers of said district will be unlawfully compelled to pay taxes for the interest and sinking fund on said bonds, and denies that the residents of said highway district will suffer unjust taxation if said bonds are sold, and denies that the highway district will be compelled unjustly or unlawfully to contribute to the construction, maintenance and repair of the roads and bridges outside of their district.   To said answer is attached the complete proceedings of the board of county commissioners in connection with the proposed bond issue.

The case was presented upon the issues thus made, it being conceded that only questions of law were involved in the case. The plaintiff contends that the proposed bond issue will be illegal and void, and should be enjoined for the following reasons: 1. That notice calling for the election does not contain an adequate statement of the purpose for which the bonds are to be issued; 2. The purpose for which the election is called is a double one; 3. The proposed bond issue is unauthorized by the constitution and laws of the state; 4. The bonds, if issued as proposed, will result in double taxation in violation of the constitution.

Counsel for plaintiff contends, first, that the notice calling the election does not contain an adequate statement of the

purpose for which said bonds are to be issued. Said notice, after reciting the action of said board and declaring that in the opinion of the board it was for the best interests of the county and the public good to bond the county for the sum of $200,000 for the construction and repair of roads and bridges, proceeds as follows:

"Notice is hereby given that on Wednesday the 25th day of June, 1913, an election shall be held according to law for the purpose of determining whether or not the said Ada County, State of Idaho, shall issue bonds in the sum of Two Hundred Thousand Dollars, the proceeds thereof to be used in the construction, building and repair of roads and bridges within said Ada County, State of Idaho."

It is contended that such notice ought to have specified the particular roads or bridges that were to be constructed, built and repaired; that that ought to be done so that the voter might determine whether or not the proposed bonds were such as the statute authorized, and so that the voter could intelligently approve or disapprove the plans of the commissioners, that there might be a reasonable limit placed upon the commissioners in spending the people's money.

The provisions of sec. 1962, Rev. Codes, authorize the issuing of bonds by the county under certain conditions and for the following purposes: "For purchasing a site and erecting a courthouse and jail or a jail thereon, or for the construction or repair of roads or bridges," and for other purposes which it is not necessary to state here. Sec. 1968 directs that if the question of bonding the county is submitted to the voters, the board shall cause notice of the intention to hold such election to be given and such notice shall recite, among other things, regarding the election, "the purpose thereof." The notice of said election directs that such election shall be held for the purpose of determining whether bonds in the sum above stated shall be issued and the "proceeds thereof to be used in the construction, building and repair of roads and bridges within said county." The people, then, of Ada county were fully apprised by said notice that they were called upon to vote as to whether or not bonds should be issued in the sum

of $20,000 for the construction and repair of roads and bridges within the county, and the question is presented: Was it necessary that the notice specify the particular roads or bridges that were to be constructed or repaired by the proceeds of the sale of such bonds?

In support of the contention that that notice is void for the reason that it did not specify the particular roads or bridges to be repaired and constructed and the amount of money to be used for roads and the amount to be used on bridges, counsel cites *McMahon v. Board of Supervisors,* 46 Cal. 214. The statute of California under which that decision was rendered was very different from the statute here under consideration. (See Act 1870, Cal. Stats. 1869–70, p. 730.) That statute required to be stated in the notice the specific object for which the money raised by the commissioners on such bonds was to be expended and the amount required therefor. Under that statute the California court held that the specific object must be stated, and under the construction placed upon that statute by the California court, the notice was required to specify and set forth the particular roads and bridges intended to be constructed and repaired. "Specify" is defined to mean: to mention specifically; to state in full and explicit terms; to point out; to particularize, or to designate by words one thing from another.

Counsel also cites the case of *State ex rel. Horsley v. Carbon County,* 38 Utah, 563, 114 Pac. 522. The statutes of Utah under which that decision was rendered provide that "The board shall by order specify the particular purpose for which the indebtedness is to be created," etc. The statute of this state under which said notice was given and said election was held provides that the purpose only need be stated in the notice, for which the proceeds of the bond issue shall be used, and does not require that the notice shall specify or set forth the particular roads or bridges intended to be constructed or repaired, or the portion or part of the proceeds of the sale of such bond issue that shall be used in the repair and construction of bridges separate from the portion to be used in the repair or construction of roads. Under the statute the board of

county commissioners is given a large discretion in regard to this matter. It is not supposed that the board of county commissioners will build either roads or bridges in parts of the county where they are not needed, but the presumption is that they will build them in the parts of the county where they are most needed and where they will be most beneficial to the people of the county. If the people do not desire to vote bonds where the board has such large discretion in the matter, they are not compelled to do so.

In *Potter v. Lainhart,* 44 Fla. 647, 33 So. 251, the question of the sufficiency of the notice calling for an election for an issue of bonds was raised under sec. 591 of the Rev. Stats. of Florida, as amended in 1889 by chap. 4711, providing that, ''Whenever the board of county commissioners of any county in this state shall deem it expedient, or to the best interest of such county, to issue county bonds for their county, for the purpose of constructing paved, macadamized or other hard surfaced highways [building and repairing roads and bridges] . . . . . '' In the resolution of the board in that case it was recited that they ''deemed it expedient to issue bonds for the purpose of constructing paved, macadamized or other hard surfaced highways, and to erect a courthouse and jail,'' and it was resolved by the board that $150,000 was required for such purpose, $50,000 for said buildings and $100,000 for road purposes. That notice was held sufficient. (See *Stone v. Gregory,* 110 Ky. 492, 61 S. W. 1002.)

In *Weston v. Hancock County,* 98 Miss. 800, 54 So. 307, notice was given by the board of county commissioners that the election was for the purpose of issuing bonds in the sum of $125,000 for the purpose of working roads and building bridges of the county. The notice was duly given, as required by statute, and the necessary steps taken to perfect the bond issue, and in regard to the purpose for which the bonds were to be used, the court said:

''When the statute speaks of 'constructing public roads,' it uses the term in its most comprehensive sense. It does not mean merely the building of roads not before having an existence, but it means the maintenance and betterment of roads

already in existence, and for this purpose the bonds of the county may be issued, if authorized by the board and not vetoed by the taxpayers in the method allowed by law.'' (See *Corker v. Village of Mountainhome,* 20 Ida. 32, 116 Pac. 108.)

Our statute provides that bonds may be issued for the construction and repair of roads and bridges, and a notice calling an election which states such purpose is good. Evidently the word ''purpose'' as used in said sec. 1962, Rev. Codes, and the general bond act (art. 6, chap. 2, tit. 11, Rev. Codes, secs. 1960 to 1972, inclusive), applies only to those purposes set forth in the statute and not to the specific works of construction which may be carried on under one of these main purposes.

By more than a two-thirds vote of the electors of said county at such election, the people decided in favor of the issuance of such bonds for the purpose and in the amount stated in said notice. It is not to be presumed that the board will use the funds arising from the sale of said bonds for any other purpose than for constructing and repairing roads and bridges in said county. If they should undertake to do so, the taxpayer has his remedy.

In *Jenkins v. Williams,* 14 Cal. App. 89, 111 Pac. 116, a controversy arose over the contention that the commissioners had the right to spend the money in other ways than those specified in the order calling the election. The court there held that the order calling the election controlled, and the money could not be spent except in the manner there specified.

In the case at bar, the money arising from the proceeds of the sale of such bonds can only be expended in the construction and repair of roads and bridges. Under the provisions of sec. 882b (see Sess. Laws 1911, p. 167), the entire jurisdiction of building and repairing of roads and bridges (outside of highway districts and such highways as are under the state highway commission) is given to the respective boards of county commissioners of the several counties in the state, and it is contended in this case that it might be unsafe from the standpoint of public policy to allow the county commissioners to spend the county's money as in their judgment they see fit. But the legislature in enacting said section 882b expressly

gives such power to the county commissioners without reservation, and has settled that question absolutely in favor of the county commissioners' jurisdiction. If the people of the county do not desire to place bonds in the hands of the county commissioners to be sold for the purpose of constructing and building and repairing roads and bridges, it is in their hands to defeat any bond issue for that purpose. The bond law of the state was in force at the time sec. 882b was passed, and the legislature will be presumed to have had in mind the possibility of commissioners having bond money at their disposal for the construction of roads and bridges; and yet the legislature has not in any way limited the board's power to expend such funds in the manner authorized by law.

As above stated, the statutes of California differ from ours in regard to the question under consideration, and the California decisions cited by plaintiff are not applicable to this case. Sess. Laws 1907, sec. 4088, p. 382, provides, "The board of supervisors thereof shall by order specify the purpose for which the indebtedness is to be incurred," while sec. 1968, Rev. Codes of Idaho, reads: "The said notices shall recite the action of the board in deciding to bond the county, the purpose thereof," etc. The question involved here is not a question of jurisdiction of the board of commissioners being limited, but is a question of the people having the power under proper legislative enactment to express their will and desire in a certain manner. Nowhere in our statute is it made mandatory upon the board to designate the specific purposes for which the proceeds of such bonds shall be used, other than in the construction and repair of roads and bridges generally as distinguished from the construction of courthouses, jails, etc., as provided by said sec. 1962.

(2) It is next contended that the notice states a double purpose and for that reason said election was void. Counsel contends that the notice provides that the proceeds are to be used for roads and bridges, and that under the provisions of sec. 896, as amended by Laws of 1911, p. 162, the board of commissioners must each year at the proper time estimate the probable amount of property tax for road purposes and the

probable amount of tax for bridge purposes which may be necessary for the ensuing year, and must regulate and fix the amount of property road tax and the amount of property bridge tax, and levy the same thereby, and that roads and bridges are clearly specified under our statute for which bonds may be issued under the provisions of said sec. 1962, and that said order did not specify the amount of said $200,000 to be used for bridges and the amount to be used for roads. Both bridges and roads are but parts of one general system. It would be impossible to designate the proportional part of the proceeds of the bond issue that would be required for the construction of bridges and the proportional part that would be required for the construction of roads or highways until the matter had been carefully determined by an engineer, and no doubt the legislature, if they considered the matter at all, considered that the proceeds of the bonds voted for the construction of roads and bridges would be properly applied by the board in the construction of roads and the necessary bridges to make such roads complete. It was not necessary for the board of county commissioners to employ engineers for the purpose of making a careful estimate of the cost of the construction of the roads they desire to construct, or to ascertain the required amount necessary to construct the bridges on such roads. Under our law the bridges are a part of the road. The bridges taken with the other parts of the road constitute the highways of the county. (Sec. 874, Rev. Codes.) As touching upon this question, see *State v. Carbon County,* 38 Utah, 563, 114 Pac. 522.

In *Blaine v. Hamilton,* 14 Wash. 353, 116 Pac. 1076, the supreme court of Washington, after stating, "The true criterion is: Are the several parts of the project so related that united they form in fact but one round whole?" quotes with approval from *Coleman v. Town of Eutaw,* 157 Ala. 327, 47 So. 703, as follows:

"But where the purpose evolved in the blending is the product of two of the purposes enumerated in the act for which bonds may be issued, and they might naturally and reasonably be deemed or made a part of one of a more general

scheme, we are of the opinion that the act does not inhibit the exercise by the governing body of a discretion to blend into one proposition for submission to the voters such enumerated purposes; for instance, we merely suggest the building of bridges and constructing of streets.''

It was held in *State ex rel. Whitmore v. Carbon County,* 36 Utah, 394, 104 Pac. 222, that a notice in substantial compliance with the statute is sufficient. It is stated in 15 Cyc., p. 323, that a notice in any form which does not mislead the electors and cause them to lose their votes and which is in general conformity with the statute, will be sufficient.

(3) It is contended that the taxpayers in the highway district will receive no benefit from the bonds, but will be compelled to pay their part of the same with interest. It must be conceded that the bonds are issued for a public purpose. County roads and bridges are undoubtedly improvements in which the entire public is interested and benefited, although a particular individual may never have occasion to use them. For administrative purposes, so far as the county bonds are concerned, the county is the unit of taxation. The legislature has the undoubted right to establish such taxation districts, and as a rule its discretion in this regard will not be interfered with. Whatever rights the parties to this action have as between themselves as to whether or not they are entitled to contribution from the proceeds of these bonds, is not a material question at this time and has no bearing as to the validity of the bonds. The lack of benefit to a highway district was considered by this court in *Reinhart v. Canyon County,* 22 Ida. 351, 125 Pac. 791.

The case of *Johnson v. Williams,* 153 Cal. 368, 95 Pac. 655, discusses quite fully three of the points raised in this case, and among other things, it is said:

''It is undoubtedly within the power of the legislative department to authorize recourse by a county to its general fund, consisting almost entirely of taxes collected from all parts of the county, for work on its public roads and highways lying outside of the limits of its municipalities within the county, and our statutes show several instances of the exercise of this

power, the validity of which has never been challenged. . . . . That section (4088, Pol. Code) provides that any 'county may incur . . . . a bonded indebtedness for any purpose for which the board of supervisors are herein authorized to expend the funds of said county, *or for the purpose of building or constructing roads, bridges or highways.'* . . . . We are satisfied that section 4088 of the Political Code authorizes the issuance of the bonds of Sacramento county for the purpose of building or constructing roads, bridges and highways therein.''

Counsel contends under said provisions of sec. 15, art. 7, and sec. 3, art. 8, of the constitution, that the counties are commanded to meet the ordinary and necessary expenses by current tax levy, and that such current tax levy is provided for by secs. 869 and 900, Rev. Codes, and argues that in spite of said constitutional and statutory provisions the county commissioners have admitted by their answer that they do not intend to make a road and bridge levy, but expect to pay for the ordinary and necessary road and bridge work out of the proceeds of said bonds.

Conceding that the board of county commissioners may intend to illegally expend some of the proceeds of said bond issue, that does not make void the issuance of said bonds. The ordinary and usual expense of keeping in repair the roads and bridges of the county cannot legally be paid out of the proceeds of said bond issue, but where a systematic improvement of a road system of a county is undertaken and in the prosecution of that work roads and bridges are repaired and put in good condition under such plan or system, the expense thereof may be paid out of the proceeds of such bond issue.

It is lastly contended that the bond issue as proposed will result in double taxation and that under the provisions of sec. 5, art. 7, of the constitution, that double taxation of property for the same purpose during the same year is prohibited, and the case of *Humbird Lumber Co. v. Kootenai Co.*, 10 Ida. 490, 79 Pac. 396, is cited. We cannot agree with that contention. In our view of the case, the voting and issuance of said bonds would not result in double taxation. If the present method of allowing a county to levy a general road tax which shall

include the territory lying within a highway district, and to issue bonds which shall be a charge against the entire property of the county including that within the highway district, and also of allowing highway districts to levy special taxes within their territory, and to issue bonds chargeable against that property within the district is unwise, unjust and inequitable, relief cannot be afforded by the courts, but is a matter to be presented by the legislature, and can in no manner affect the validity of the bonds issued as in the case at bar.

It was said in *State v. Board of Commissioners* (Ind.), 82 N. E. 482, that "The construction and repair of public highways by the state under any system it may adopt is the exercise of a state function, and is, as was said by Judge Cooley, *supra,* the exercise of one of the most important functions of government." If the legislature has enacted a law that is unwise or unjust, the remedy must be sought from the legislature and not from the judicial department of the state. As touching upon this, see *State v. Wheeler*, 141 N. C. 773, 115 Am. St. 700, 5 L. R. A., N. S., 1139, 53 S. E. 358.

In this connection it is proper to state that the legislature has provided a method of paying a portion of the interest on county bonds which would obviate the necessity of making a larger levy to pay interest, this being done by the provisions of the so-called automobile law passed at the 1913 session of the legislature, which law provides that the license tax received from owners of motor cars may be used to pay the interest on county road bonds. This provision may be sufficient to relieve the board as to any levy in connection with the payment of interest, and if the plaintiff highway district is compelled to contribute to the sinking fund of such bonds, this would not be double taxation, as was held in the case of *Reinhart v. Canyon Co.*, 22 Ida. 351, 125 Pac. 791.

We therefore conclude that the board of county commissioners by proper resolution passed May 24, 1913, determined and declared that the public interest and necessity and the good of the county demanded the issue of said bonds for the purpose of bridge and road construction and repair; that it was the purpose of the county commissioners to call a special

election for the purpose of submitting to the qualified electors of Ada county the proposition of bonding said county in the sum of $200,000 for the purpose of building and repairing roads and bridges in said county, which resolution was duly registered on the minutes of the proceedings of said county commissioners; that thereafter the defendant board, by resolution duly passed, called the special election to be held on the 25th day of June, 1913, for the purpose of incurring on the part of said county a bonded indebtedness for the purposes set forth in said resolution; that the notice of such election was to the effect that said proposition to be voted on at such election was in accordance and in substantial compliance with the laws of the state; that said election was regularly held, and that at such election more than two-thirds of the electors voting voted in favor of the issuance of said bonds, and a canvass of such votes was regularly had and the result declared, and that by reason of the facts as they appear from the record and the law applicable to those facts, it is hereby held and declared that said bonds are valid and legal and that the alternative writ of prohibition heretofore issued is hereby set aside and quashed and a permanent writ of prohibition denied.

Each party to pay its own costs of this suit.

Stewart, J., concurs.

AILSHIE, C. J., Dissenting.—I have no doubt of the powers of the commissioners of Ada county to issue bonds for the purpose of building or constructing roads or bridges within the county when so authorized by a two-thirds vote of the qualified electors thereof. The only question to which I shall direct my attention here is the method pursued by the commissioners in bringing this question to a vote. I am fully satisfied that the resolution of the board of commissioners and the notice of election each fail to comply with either the provisions of the constitution as contained in sec. 3, art. 8, or the requirements of secs. 1962 and 1968 of the Revised Codes. Neither the resolution nor the notice states the *purpose* for which the

money realized from the bond issue is to be used. Two separate and independent *purposes* are joined, and the voter was never given notice where the roads or bridges were to be built or the amount to be used for either purpose.

Sec. 3, art. 8, of the constitution, provides as follows:

"No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided, That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

This section has been frequently considered and construed by this court. This is the fundamental law of the state and cannot be disregarded by either the legislature or board of commissioners.

This court in *Howard v. Independent School Dist. No. 1,* 17 Ida. 537, 106 Pac. 692, considered and construed this same provision of the constitution and sec. 33 of the charter of the city of Lewiston as the same have relation to the issuance of bonds, and the court said:

"It will be observed from the foregoing provisions of the constitution that where a vote is to be taken on the question of bonding 'for any purpose,' that an election must 'be held for that purpose.' . . . . The object of requiring each 'purpose' to be separately stated and submitted is to prevent combining separate subjects so that one may gather votes for the other."

A mere casual examination of sec. 3, art. 8, will disclose that the constitutional provision with reference to the special or particular purpose for which bonds shall be issued is even more strict than the statute itself.   In other words, it requires that when bonds are to be issued for *any* "purpose," that the election must be held *for that* purpose.

Passing, then, to the provision of the statute which was evidently intended to come within the purview of the foregoing provision of the constitution, we find that sec. 1962 says:

"When the interests of the county require it and the board of commissioners of the county deem it for the public good to bond the county to fund or refund the outstanding obligations of the county, or bond the county for the purpose of acquiring funds or purchasing a site and erecting a courthouse and jail or a jail thereon, or for the construction or repair of roads or bridges, or to assist any city or village in said county in constructing a free bridge over any navigable stream within, or partly within, or adjoining, the limits of any such city or village, or for any one or more of said purposes, and the indebtedness or liability of the county that may be created by the bonding, funding or refunding aforesaid, or in purchasing a site and erecting a courthouse and jail or a jail thereon, and for the construction or repair of roads or bridges, or for assisting any city or village in the construction of any such free bridge as aforesaid, or for any one or more of said purposes, exceeds the income or revenue of the county for that year, the board of commissioners may issue bonds of the county as provided by section 1960. . . . . "

Turning, then, to sec. 1968, which provides for the giving of notice, we find that when the question of bonding is submitted, notice must be given that the election will be "held for that purpose," and that the notice "shall recite the action of the board in deciding to bond the county, the purpose thereof, and the amount of the bonds that are to be issued."   By sec. 1962 the legislature evidently intended to recite what the members thereof considered to be *separate, different, distinct* and *various purposes* as contemplated by sec. 3, art. 8, of the con-

stitution, and they proceeded to enumerate these, *not in the conjunctive, but in the disjunctive.* The different purposes for which bonds may be issued under sec. 1962 are specified as follows: "To fund or refund the outstanding obligations of the county, or bond the county for the purpose of acquiring funds for purchasing *a site and erecting a courthouse and jail or a jail* thereon, *or* for the *construction or repair* of *roads or bridges,* or to assist any city or village in said county in constructing a free bridge over any navigable stream within or partly within, or adjoining, the limits of any such city or village, *or for any one or more of said purposes.*" It will be noted by the most casual reading of the foregoing paragraph that the construction of "roads or bridges" is not one purpose only, but two purposes, and is so recognized in the latter part of the paragraph as well as in the first enumeration. While a bridge is a part of a road within the meaning of the general highway law, it is not a part of a road and not so recognized within the meaning of the bonding laws. The reason for the legislature enumerating these as separate purposes is apparent. If a bridge is destroyed, it effectually cuts off the travel over that part of the road, while a road may be out of repair and be difficult of travel, yet it does not wholly obstruct travel or the travel may be diverted around the obstruction. The construction of a bridge requires specially prepared material and skilled labor which the average citizen cannot furnish or supply. Again, it requires the expenditure of a much larger sum of money to construct a bridge than it does to repair a few miles of road. On the other hand, a place where a bridge is needed may be supplied by a ferry, as has been the case in this state at many places along our streams from time immemorial. The electors of a county might favor the construction of a road or even assist in its construction for many miles on each side of a large stream, and yet those same citizens oppose bonding their county for building a bridge across that stream. On the other hand, they might favor bonding their county for a bridge and at the same time oppose bonding the county for building a new road or improving an old one.

When sec. 3, art. 8, of the constitution was under considera-
tion in the constitutional convention, the members of that
body understood that building roads and bridges and raising
revenue therefor were separate and distinct purposes and
objects, and Mr. Gray, one of the able members of that body,
in commenting on that section, said: "Now, as I understand
it, the board of county commissioners of the county or of the
city—the proper levying board—when they levy a tax for a
certain purpose, that is, if it is for the purpose of bridges, for
the purpose of roads, or for any such purpose, they estimate
what will be necessary for the expenditures of the town or
county for that year; and that sum shall not be increased with-
out a vote of the people; there shall be no other tax levied
except that one which is provided by the board of county
commissioners."

The only notice the voters of Ada county had of the pur-
poses and objects of the bond issue was as follows:

"Notice is hereby given that on Wednesday, the 25th day
of June, 1913, an election shall be held according to law for
the purpose of determining whether or not the said Ada
County, State of Idaho, shall issue bonds in the sum of Two
Hundred Thousand Dollars, the proceeds thereof to be used
in the construction, building and repair of roads and bridges
within said Ada County, State of Idaho."

Now, it will be seen from the foregoing notice, the only in-
formation the voters had with reference to the purpose and
object of this bond issue was that the money would be "used
in the construction, building and repair of *roads and bridges*"
within said Ada county. They had no notice of how much
was to be used in the building of bridges and how much in
the building of roads; they had no notice of the amount to be
used in the repair of bridges or of the amount to be used in
the repair of roads; they had no notice as to where the bridges
were to be located or how many were to be built, nor did they
have any notice as to where the roads were to be constructed,
the part or portion of the county through which they were to
run or the kind of roads to be constructed. Many of the
school districts of the state, cities, town and villages and coun-

ties have issued bonds, but in only one case that has found its way to this court have the commissioners, the attorneys or anyone connected with the proceeding, attempted to hold an election on a general blanket notice such as this. The laymen, lawyers and courts throughout this state have generally understood and proceeded upon the theory that sec. 3, art. 8, of the constitution and the statutes enacted thereunder providing for bond elections and the giving of notice thereof required that the purpose for which the bonds were to be issued and the money to be expended should be stated. That was the holding in *Sommercamp v. Kelly,* 8 Ida. 712, 71 Pac. 147; *Howard v. Independent School Dist. No. 1,* 17 Ida. 537, 106 Pac. 692; *Corker v. Village of Mountainhome,* 20 Ida. 32, 116 Pac. 108; *Platt v. City of Payette,* 19 Ida. 480, 114 Pac. 25. In the latter case this court said:

"The question to be determined in our opinion in a case of this kind is: Was the proposition, or were the propositions, so clearly and distinctly submitted to the electors of the city or town that they could intelligently and positively express their wishes in regard to each, or any, or all of the propositions so submitted? Was the proposition, or were the propositions, so submitted to the electors that they could adopt or reject either, any, or all of the propositions so submitted? Whether these propositions were provided for in one ordinance, or in separate ordinances, would be immaterial, so long as the electors were not deceived, misled, or prevented from voting upon each proposition separately and independently of the others."

In *Ostrander v. City of Salmon,* 20 Ida. 153, 117 Pac. 692, this court held that notice given of an election for the issuance of municipal coupon bonds was in violation of the statute, for the reason that it failed to "specify separately the different purposes for which such bonds" were to be issued, and that "the voter should be given an opportunity to express his will upon each purpose separately." In that case the city voted to incur a bonded indebtedness of $50,000. The notice recited that the board of trustees of the village of Salmon City proposed to incur indebtedness in the sum of $50,000,

"'$30,000 of which shall be used for the purchase of the water-
works, water rights, system and franchises of the Salmon City
Water Company, Ltd., and that an amount not to exceed the
sum of $15,000 of such indebtedness and bonds shall be used
to enlarge and extend the said waterworks and water system,
and an amount not to exceed the sum of five thousand dollars
shall be used for the purchase, erection, construction and fur-
nishing of a public building and building site for the use of
such village.''    This court held that such a notice ''states two
separate and distinct purposes and questions, and the ballot
used at the election which requires the voter to designate
thereon his vote either for or against the single proposition of
favoring or disapproving the issue of the aggregate amount of
the bonds proposed does not give the voter an opportunity of
expressing his will upon each of the purposes and questions in-
corporated in the ordinance.''

When sec. 3 of art. 8 of the constitution was under discus-
sion in the constitutional convention, one of the committee
who presented it suggested that it was taken almost literally
from the constitution of California.    A perusal of sec. 18, art.
11, of the constitution of California of 1879 shows that our pro-
vision has been copied literally from the California constitu-
tion, with the exception that the *proviso* attached to sec. 3, art.
8, of our constitution is not found in sec. 18, art. 11, of the
California constitution.    The supreme court of California, in
*McMahon v. Board of Supervisors*, 46 Cal. 214, passed on a
question almost identical with the question here involved so
far as the notice of election is concerned, and held that it was
insufficient and was not a compliance with the statute and that
it was misleading to the voters.    The court said:

"Under this proclamation, the money, when raised, might
have been expended in the construction and improvement of
any highways, or the building of any bridges in the township,
at the discretion of the trustees.    If such a proclamation was
a compliance with the statute, it would have been equally so
if it had omitted to mention any particular road or highway,
and had specified only that the money was to be expended in
the improvement of highways and the building of bridges

generally in the township. The voters would have had no information as to what particular highways or bridges it was proposed to improve or build.''

While my associates have declined to follow the California case and, to my mind, have overruled a uniform line of decisions from our own court, they have traveled to Florida, Kentucky and Mississippi for the cases of *Potter v. Lainhart,* 44 Fla. 647, 33 So. 251; *Stone v. Gregory,* 110 Ky. 492, 61 S. W. 1002; *Weston v. Hancock County,* 98 Miss. 800, 54 So. 307. I shall not attempt to analyze any one of these cases, but shall dismiss them with the statement that an examination of the cases will disclose that not a single one of them is dealing with or touches the question under consideration in this case.

The method pursued in this election enables those interested in carrying the bond election to play the different sections of the county against each other and secure the votes of all sections in favor of the issue. By this proceeding the commissioners are not bound to expend the money on any particular road or bridge as the law contemplates they shall do. Each section or district of the county might therefore be easily convinced that if the bond issue carried, a certain road or bridge in that section would be constructed and thereby a large share of the improvement to be made would fall to such section or community. This kind of campaigning could easily be done in every section or community in the county. In my opinion, both the constitution and statute intended to prohibit and preclude the possibility of any such thing occurring by requiring the board to state the *purpose* for which the money would be used,—how much for roads and how much for bridges, and the location of the road or roads and bridge or bridges to be constructed. If this thing had been done, the vote might have been as large or even larger than it was in favor of the issue, or it might have been largely against the issue, depending upon the kind of representations made and the understanding of the voters. *The point is that the voters had a right to know the facts in advance so as to enable them to vote on the question in the light of the real facts of the case*

*and the real intentions of the board of commissioners.     They have certainly not had that opportunity in this case.*

I think an election ought to be ordered and held in accordance with the requirements of the constitution and statute, and let the voters of the county know the use and purpose to which the money is to be applied.